BUTCHERS' SLAUGHTERING AND MELTING ASSOCIATION
*vs.* COMMONWEALTH.

Suffolk.    December 11, 1894. — April 3, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Taking of Easement in Land under Metropolitan Sewerage Act — Damages —
Evidence.*

When land or an easement in land is taken under the right of eminent domain,
and damages are to be assessed as a compensation to the owner for the value
of the land taken and the injury, if any, to his remaining land, the owner may
put in evidence the reasonable cost of any necessary adaptation of his land to
the new state of things produced by the public work for which his land was
taken, if the adaptation and the cost are proper, having reference also to the
market value of his own estate ; and when such damages are to be assessed, if
it is contended by the respondent that the damages are offset in whole or in part
by some special and peculiar benefit caused to the petitioner's property by the
public work for which his land was taken, the fair and reasonable cost to the
petitioner of making that special and peculiar benefit practically available is to
be taken into account in ascertaining the amount of special and peculiar benefit to
be offset, and so may be given in evidence by the petitioner upon the assessment
of damages.

At the trial of a petition for the assessment of damages for the taking of an ease-
ment in the petitioner's land, under the Metropolitan Sewerage Acts (Sts. 1889,
c. 439, 1890, c. 270), the petitioner contended that the laying of the State sewer
through his land, which was used as slaughtering and rendering works, with
drainage into a river, made a new adaptation of his works to the changed con-
dition of affairs necessary and proper; and he introduced in evidence, without
objection, an order from the State board of health to discontinue his drainage
into the river, and subsequent letters to him from the sewer department of the
city and the Metropolitan Sewerage Commission, concerning a plan of a particu-
lar or private sewer which he proposed to make to connect his works with the
State sewer, which letters tended to show that such plan was satisfactory to
both of those authorities; and there had been a view of the premises by the
jury.   The State sewer had been completed, and the petitioner was then build-
ing his proposed sewer upon his land parallel with the State sewer and connect-
ing with it at three points.   He was asked to state the expense of his particular
sewer, and the question was excluded.   *Held,* that the evidence should have
been admitted.

At the trial of a petition for the assessment of damages for the taking of an ease-
ment in the petitioner's land, under the Metropolitan Sewerage Acts (Sts. 1889,
c. 439, 1890, c. 270), the respondent was allowed to show the mode of construc-
tion of the State sewer, and to introduce evidence tending to prove that the
sewer would carry a considerable weight of buildings over it, and that, as repairs
could be made from the inside through the man-holes, it would never be neces-
sary to disturb the soil in repairing it.   *Held,* that the evidence was competent.

PETITION for the assessment of damages for the taking of an easement in the petitioner's land in the Brighton district of Boston, under the Metropolitan Sewerage Acts. Sts. 1889, c. 439, 1890, c. 270. At the trial in the Superior Court, before *Braley,* J., the jury returned a verdict for the petitioner; and the petitioner alleged exceptions to the rulings upon questions of evidence, which appear in the opinion.

The case was argued at the bar in December, 1894, and afterwards was submitted on the briefs to all the judges.

*S. J. Elder,* (*C. S. Lincoln* with him,) for the petitioner.

*W. D. Turner,* for the respondent.

BARKER, J. We are all of opinion that when land, or an easement in land, is taken under the right of eminent domain, and damages are to be assessed as a compensation to the owner for the value of the land taken, and the injury, if any, to his remaining land, the owner may put in evidence the reasonable cost of any necessary adaptation of his land to the new state of things produced by the public work for which his land was taken, if the adaptation and the cost are proper, having reference also to the market value of his own estate. And we are also all of the opinion that, when such damages are to be assessed, if it is contended by the respondent that the damages are offset in whole or in part by some special and peculiar benefit caused to the petitioner's property by the public works for which his land was taken, the fair and reasonable cost to the petitioner of making that special and peculiar benefit practically available is to be taken into account in ascertaining the amount of special and peculiar benefit to be offset, and so may be given in evidence by the petitioner upon the assessment of damages.

In the present case it was contended by the petitioner that the laying of the State sewer through its lands, which were used as slaughtering and rendering works, with drainage into the Charles River, made a new adaptation of its works to the changed condition of affairs necessary and proper, and it introduced in evidence without objection, an order from the State board of health to discontinue its drainage into the river, and subsequent letters to the petitioner from the sewer department of the city and the Metropolitan Sewerage Commission, concerning a plan of a particular or private sewer which the peti-

tioner proposed to make to connect its works with the State sewer, and from which correspondence the jury might well find that the plan was considered a satisfactory one, both by the sewer department of the city of Boston, and by the board of Metropolitan Sewerage Commissioners.    There had been a view of the premises by the jury, and it may be assumed that before the view such statements had been made to the court and jury in behalf of both parties as were necessary to enable the jury before viewing the premises so to understand the claims of the parties that the view might enable them thereafter to understand and properly apply the evidence.

At the time of the trial, the State sewer had been completed, and the petitioner was then building its proposed particular sewer, sixteen hundred and eighty-five feet in length, upon its own lands, parallel with the State sewer, and connecting with it at three points.    Under these circumstances, the petitioner's treasurer was asked to state the expense of its particular sewer, and the question was excluded, and the petitioner excepted. The bill of exceptions states that " this evidence was offered as showing one element of damage suffered by the petitioner by the taking of his land," and the bill states no reason why the evidence was objected to or was excluded.

A majority of the court are of opinion that the exception to the exclusion of this evidence must be sustained.    The question no doubt called for the cost of building a particular sewer which the petitioner had seen fit to commence; and there was no offer in terms to show that it was a reasonably necessary or proper expenditure to make in reference to its effect on the market value of the property, nor an offer in terms to show that this expense was the reasonable cost of the work which was in process, and to be done; and it was possible that the work may have been done extravagantly.    But the correspondence in evidence tended to show that the petitioner's plans for the connection of its works with the State sewer by means of the sewer, the cost of which was offered in evidence, were reasonable; and there is no such presumption that in practical affairs men will engage in useless work, or will do it extravagantly, as to make it right to exclude the evidence offered, upon the ground that, though under some circumstances it might be admissible,

yet sufficient grounds had not been shown without putting the exclusion of the evidence upon that basis, and giving an opportunity to supply the deficiency in the preliminary proof. Especially is this the case when upon a view the jury have themselves seen in progress the work the cost of which is offered in evidence, and so may be presumed to have some means from their own knowledge of determining whether it is being extravagantly done. We are confirmed in the view that the court treated the evidence as inadmissible under any circumstances, and did not exclude it because proper preliminary proof had not been made, by the following statement. "The court in instructing the jury alluded to this matter as follows: 'Something has been said here about the entering into this sewer by the petitioner, and at this point I may as·well say something to you about this, though really it has very little, if any, bearing upon the issue tried here between the parties. You notice that you have had called to your attention that section nine of the chapter provides' that 'any person, firm, or corporation may, subject to the direction, . . . and subject to such terms, conditions, . . . connect private drains with said main sewer.' That is, after the sewer is completed, after it has become a part of the system of sewerage provided by the act, then under proper rules and regulations, which we must presume to be reasonable, those who desire to enter it can enter it. We have no occasion to try here what those rules and regulations are, or what they may be; whether they are reasonable or unreasonable; and the question what it will cost this petitioner by way of a tax on anybody to enter this sewer is not to be considered by you at all." This statement justifies the construction that the evidence was excluded because, in the opinion of the presiding justice, the matter of the petitioner's entering the State sewer had "very little, if any, bearing" upon the assessment of his, damages. There is enough in the bill of exceptions to show that evidence which, with the evidence admitted, would have justified the jury in finding the reasonable cost of a reasonable adaptation of the petitioner's lands to uses to which they might reasonably be put in consequence of the taking which made the respondent answerable to them in damages, was excluded by the court, and the bill of exceptions does not justify us in holding that it could

not have been found a necessary adaptation. There is another aspect of the case in which evidence of the reasonable cost of connecting the petitioner's premises with the State sewer was admissible, but we do not put the setting aside of the verdict upon that ground, for technical reasons. It was contended by the respondent, in reply to the petitioner's case, and the witnesses for the respondent testified that the damage to the petitioner's land by the taking was entirely offset by the benefits which it received; and it is apparent that the reasonable expense of connecting the petitioner's works with the State sewer was a matter material to this issue. But the bill of exceptions does not show that the evidence offered and excluded in chief was again offered in rebuttal, and although it might be presumed that the respondent's contention as to this special benefit had been disclosed to the court and jury in connection with the view and before the evidence was offered, we are not disposed to place the sustaining of the exception upon this ground.

We are all of opinion that the second exception should be overruled. Under this exception, the respondent was allowed to show the mode of construction of the State sewer, and to introduce evidence tending to prove that the sewer would carry a considerable weight of buildings over it, and that, as repairs could be made from the inside through the manholes, it would never be necessary to disturb the soil in repairing it. The petitioner contends that because the damages accrued, and were fixed at the time of the taking, no evidence should have been admitted of what has been since done in the construction of the sewer. But the respondent took only an easement, the right " to carry and conduct under the . . . lands, and therein to construct, operate, and forever maintain an underground main sewer, and connecting sewers, drains, manholes, and underground appurtenances, and to repair and renew the same." The petitioner still had the right to use his land in any way not inconsistent with the exercise of the easement taken, and may erect buildings over the sewer if it can do so without interfering with the reasonable exercise of the respondent's rights. *Clark* v. *Worcester*, 125 Mass. 226.

The question for the jury was, How far would the exercise of the right taken be likely to affect the petitioner's general right

to use the property as owner?   If nothing had been done at the time of the trial, the probabilities would necessarily have to be ascertained from a consideration of such facts as would bear on the use of the land likely to be made in the exercise of the right taken.   The construction of the sewer before the trial simply made certain many elements of fact which before were problematical.   These facts were properly placed before the jury, not to increase or diminish the damages which resulted from the taking, for these accrued at the instant of the taking, but to aid the jury in determining what the damages were.   We are of opinion that the evidence was competent.

As the first exception is sustained, there must be a new trial.                                                           *So ordered.*