WILLIAM MANNING *vs.* CITY OF LOWELL.

Middlesex.    January 10, 1899. — March 4, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, & LATHROP, JJ.

*Land Damages — Evidence.*

Land taken by the city of L. was situated a few hundred feet from the boundary line between L. and the town of C., and its general character was not materially different from that on the opposite side of the line in C.   A. had lived and been an assessor of taxes in C. for many years.   He had not dealt in real estate in L., nor near the land taken, but had kept himself informed of values in that section.   He knew of no sales in that vicinity before the land was taken, but knew of two sales in the two following years of lands several hundred feet away from that land.   He was a contractor and grader, doing business mostly in L., living within five hundred feet of the boundary line, and owned land within fifteen or sixteen hundred feet of the land taken.   *Held,* upon a petition for an assessment of damages for the land taken, that it could not be said that the refusal to allow A. to testify to the value of the land was erroneous.

At the trial of a petition for an assessment of damages for land taken by a city, if the petitioner contends that the value of the land is greatly enhanced by the presence in it of extensive deposits of building sand, for. which there was a steady and continuous demand, and a witness for him is allowed to testify to the value of the sand, it is competent for the respondent to cross-examine the witness for the purpose of showing that the sand is of less value than that stated by him.

A memorandum, prepared by the owner of land, showing his valuation of it, and given by him to an assessor of taxes for the city in which the land is situated, during a conversation relating to an abatement of taxes on the land, the valuation so shown being much less than that sought to be established by the owner at the trial of a petition against the city for an assessment of damages for taking the land, is admissible in evidence at such trial.

At the trial of a petition for an assessment of damages for land taken by a city, evidence of an attempted· sale of the land, just after the taking, by the peti-

tioner, who was then unaware of such taking, for a price much less than the value of the land sought to be established by him at the trial, is properly admitted, he being allowed to give his reasons for making the sale, and the jury being instructed that they might consider the fact of the sale and the price received one piece of evidence, "to be taken along with all the evidence in the case," and subject to such weight as they thought they ought to give to the explanations made by the petitioner as to the reasons which induced him to make the sale.

If, at the trial of a petition for an assessment of damages for land taken by a city, a witness called by the respondent testifies as an expert in regard to the value of the land, placing it lower than that sought to be established by the petitioner, no exception lies to the exclusion of the question, on cross-examination, as to the prices obtained by him for land which he sold in the year of the taking, it appearing that his land was situated in another part of the city, across a stream of water, about a mile away from the land taken, and reached by a different line of street railway cars and by different streets.

PETITION to the Superior Court for a jury to assess damages for the taking of the petitioner's land by the respondent city, acting under the authority of St. 1891, c. 337, for the enlargement of a burial ground. At the trial, before *Bishop*, J., the jury returned a verdict for the petitioner; and he alleged exceptions, which appear in the opinion.

*J. C. Burke & J. F. Corbett*, for the petitioner.

*F. W. Qua*, for the respondent.

LATHROP, J. The petitioner's land was taken on September 8, 1891, by the respondent, acting under the authority conferred upon it by the St. of 1891, c. 337, for the enlargement of a burial ground. The petitioner, being dissatisfied with the damages awarded him in the Superior Court, has brought to this court various exceptions which relate to the admission or exclusion of evidence.

1. The first exception relates to the refusal of the court to allow one Dix to testify as to the value of the land in question. The petitioner's land was situated in Lowell, a few hundred feet from the boundary line between Lowell and the town of Chelmsford. The general character of the petitioner's land was not materially different from that of the land on the opposite side of the line in Chelmsford. Dix had lived in the latter town about twenty-nine years, and had been for eleven years an assessor of taxes in Chelmsford, ceasing to hold office in 1889. He had not dealt in real estate in Lowell, nor near this place, but had kept himself informed of values " in this section." He knew of no sales of

land in the vicinity of the petitioner's land before the taking thereof; but knew of two sales in the vicinity of the petitioner's land, one in the autumn of 1892, and the other in the spring of 1893. These sales were of lands twenty-two hundred feet and thirteen hundred feet away from the petitioner's land by the road, or five hundred or six hundred feet in a straight line. Dix was a contractor and grader, doing business for the most part in Lowell. He lived within five hundred feet of the boundary line, and owned land within fifteen hundred or sixteen hundred feet of the petitioner's land.

It has been often said by this court that the question of the qualification of a witness to testify is largely a matter of discretion in the presiding justice. *Chandler* v. *Jamaica Pond Aqueduct,* 125 Mass. 544. *Phillips* v. *Marblehead,* 148 Mass. 326. *Teele* v. *Boston,* 165 Mass. 88. We cannot say in this case that any error was committed. The witness may have been qualified to testify as to the value of lands in Chelmsford, and yet not qualified to testify as to the value of lands in Lowell. Land in one place may have a different value from land in another, although they are similarly situated and near each other. Value depends upon other things than situation, such as the rates of taxation, sewers, water supply, and accessibility to schools, as the counsel for the respondent well argues. It does not appear whether the sales concerning which the witness testified were of lands in Lowell or Chelmsford. Nor does it appear that there were not other witnesses available to the plaintiff better qualified to testify as to the value of his land. See *Teele* v. *Boston,* 165 Mass. 88, 89.

2. The second exception relates to the admission in evidence of two questions put on cross-examination to one Jenness, a witness called by the petitioner, and the answers thereto. The petitioner contended that the value of the land in question was greatly enhanced by the presence in it of extensive deposits of building sand, for which there was a steady and continuous demand. There was evidence that there were fifty thousand loads of sand in the land. Jenness testified, on direct examination, that the sand was worth in the ground twenty-five cents per load. On cross-examination he was asked whether, in giving the market value of the sand, he had taken into account the

large quantity of sand in the land, the fact that its purchase would require of its purchaser a large outlay in cash, and the loss of interest on the money that might be paid for it. The witness answered that he had not taken all the elements assumed in the question into account. He was then asked what would be the value of the sand taking these elements into account. He answered sixteen or seventeen cents, possibly, per load.

All of the evidence relating to the value of the sand as merchandise might have been excluded in the discretion of the presiding justice, as the question in the case was the market value of the land, and not the value of sand. *Providence & Worcester Railroad* v. *Worcester*, 155 Mass. 35. As was said in *Moulton* v. *Newburyport Water Co.* 137 Mass. 163, 167, the value for special and possible purposes is not the test; " but the fair market value of the land in view of all the purposes to which it was naturally adapted." As the judge in his discretion allowed the petitioner to go into the question of the value of the sand as merchandise, it was certainly competent for the respondent to cross-examine the witness, and show, if it could, that the sand was of less value.

3. One Maguire, a witness called for the respondent, testified that, in 1889, he was an assessor of taxes for the respondent city; that in that year the petitioner had a conversation with him relating to an abatement of the taxes on the land in question and other property; and that the petitioner gave the witness a pencil memorandum, prepared by the petitioner. This memorandum was produced. It showed among other things the petitioner's valuation of the land in question, which was very much lower than the value sought to be established by the petitioner at the trial. This evidence was clearly competent as an admission made by the petitioner. *Patch* v. *Boston*, 146 Mass. 52.

4. Two days after the taking, the petitioner, being then unaware that his land had been taken, conveyed or attempted to convey it to one Brown, reserving to himself the building and standing wood, with the right to remove the same within one year. The consideration of the conveyance was $4,451.19, to be paid by promissory notes of Brown. This amount was much less than the value of the land in question sought to be estab-

lished by the petitioner at the trial. The facts in regard to the conveyance to Brown and the consideration were testified to by the petitioner, who was called as a witness by the respondent, and they were admitted, subject to the petitioner's exception. On cross-examination the petitioner testified that he was induced to sell to Brown at the price named, because, having seen it stated that the city proposed to take the land, he wished to avoid vexation and controversy with the city, and that, not having made an examination of the sand, he was not aware of its value. The jury were instructed that they might consider the fact of the sale and the price received as one piece of evidence, "to be taken along with all the evidence in the case," and subject to such weight as they thought they ought to give to the explanations made by the petitioner as to the reasons which induced him to make the sale.

We see no ground for the exception to the admission of the evidence. If the petitioner had bought the land shortly before it was taken, evidence of what he paid for it would have been admissible. *Ham* v. *Salem,* 100 Mass. 350. Sales of other lands in the vicinity would also have been admissible. *Wyman* v. *Lexington & West Cambridge Railroad,* 13 Met. 316, 326. *Shattuck* v. *Stoneham Branch Railroad,* 6 Allen, 115. *Roberts* v. *Boston,* 149 Mass. 346. Nor is there any doubt that the sale, which would have been effectual but for the taking, was properly admitted. The petitioner was allowed to make any explanation he saw fit which might affect the weight to be given to the evidence; and the jury were properly instructed in regard to it.

There is nothing in the bill of exceptions to show what was the value of the building and the standing wood upon the land, nor has the petitioner made any contention in his argument that the fact that the attempted conveyance to Brown did not include the building and the standing wood makes any difference. For aught that appears, the building and wood might have been of but little value.

5. One Shepard, a witness called by the respondent, who had testified as an expert in regard to the value of the land in question, placing it lower than the value sought to be established by the petitioner, was asked on cross-examination as to the prices obtained by him for parcels of land which he sold in 1891.

This question was excluded, and the petitioner excepted. It appeared that the petitioner's land comprised three acres and a fraction, and was suitable for building purposes. The land of the witness was also suitable for building purposes, and comprised about one hundred and sixty-four acres. It was situated in another quarter of the city, across a stream of water, about a mile away from the land in question, reached by a different line of street railway cars and by different streets. It was affected by a situation and circumstances unlike those affecting the land in question, but was about the same distance from the centre of business in Lowell as the petitioner's land. We are of opinion that this evidence was clearly inadmissible, and that the ruling was right. *Chandler* v. *Jamaica Pond Aqueduct*, 122 Mass. 305. *Haven* v. *County Commissioners*, 155 Mass. 467, and cases cited. It is urged that the evidence was admissible, on cross-examination, to show the grounds of the opinion of the witness. But the limit to be allowed on cross-examination is largely in the discretion of the presiding justice. *Phillips* v. *Marblehead*, 148 Mass. 326. *Thompson* v. *Boston*, 148 Mass. 387. In the case before us, nearly everything in respect to the two parcels of land was so different that the petitioner was not entitled, under the guise of obtaining the reason for the opinion of the expert, to have the question answered. *Haven* v. *County Commissioners, ubi supra.*                    *Exceptions overruled.*