## J. EUGENE COCHRANE *vs.* COMMONWEALTH.

Norfolk.    December 15, 1899. — February 28, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Land Damages — Metropolitan Sewer — Expert — Evidence.*

Where it is sought to prove the damage to property sustained by reason of a taking of the right to maintain a public sewer through it, if it appears that the land is by nature adapted for a site for dye-works or a print-mill, it is proper to allow evidence to be given as to its value for such purposes, though the land is not then used therefor, by a person who has been shown to be qualified to testify to such value by knowledge thereof derived from experience in that business ; but testimony of this kind is to be admitted only when it is impossible otherwise to prove the value of the property in question.

At the trial of a petition to recover damages sustained by reason of a taking under the Metropolitan Sewer Act, St. 1895, c. 406, of the right to maintain a sewer through the petitioner's land, the petitioner's counsel said in the preliminary examination of a witness called as an expert on value, "What I am getting at here is the value of that supply of water in connection with the land — what is the value of that combination?   I mean that value which is independent of the neighborhood which lies behind it.   Its value for manufacturing purposes." After that eighteen questions were put to the witness and a discussion by counsel ensued before the judge ruled that the witness was qualified to testify to value; and the witness was then asked : " What is the value, the fair market value of this combination of land with the water power for the purposes of a printing business ?"   *Held,* that this question could not have been understood by the witness as having been qualified by the statement made by counsel in the preliminary examination.

PETITION to the Superior Court for a jury to assess the damages caused by the taking by the Board of Metropolitan Sewerage Commissioners, in behalf of the Commonwealth, under St. 1895, c. 406, of the right to maintain a sewer through the petitioner's land in Dedham.    At the trial before *Fessenden,* J., the jury returned a verdict for the petitioner ; and the respondent alleged exceptions to the admission of certain evidence, the nature of which appears in the opinion.

*J. M. Hallowell,* Assistant Attorney General, for the Commonwealth.

*M. Storey,* for the petitioner.

LORING, J.    The only exception presented in this case is that to the admission of the testimony of Kelsey L. Gilmore.

The petition was brought to recover damages sustained by reason of a taking of the right to maintain a sewer through the land of the petitioner under the Metropolitan Sewer Act, St. 1895, c. 406. The land of the petitioner was situated on each side of a stream known as " Mother Brook," running through a channel originally constructed in 1640, and connecting the Charles and Neponset rivers, and through which a large amount of water ran from the Charles to the Neponset. The line of the Commonwealth's taking was more or less parallel with the line of the brook, and ran through the petitioner's land from one end of it to the other. The petitioner introduced evidence tending to show " that the plaintiff's property was valuable as a mill site, and that its value was largely derived from the fact that the relation between the stream and the adjoining land made it possible to send a large quantity of water by gravity through any building that might be erected on the premises; that the quantity and quality of the water supply made the site especially valuable for any manufacturing business where a large quantity of water was needed for cleansing or like purposes, such as bleaching, dyeing, and printing factory or a paper mill; that the value of a mill site for manufacturing purposes did not depend on the value of real estate for general purposes in the neighborhood, and that some of the most valuable mill sites were remote from any town. The petitioner called various expert witnesses, including manufacturers and mill engineers. The engineers testified to the injury caused to the property by the sewer taking arising from the additional difficulty and expense necessitated in the construction and location of mill buildings and the subsequent conduct of a manufacturing business."

Among other witnesses, the petitioner called Kelsey L. Gilmore, who testified that he lived in Lexington, Massachusetts, and had been engaged in the city of Somerville for forty-one years in the business of bleaching, dyeing, printing, and finishing cotton goods; that he bought the mill in which he was manufacturing in Somerville in 1878; that he never bought any other mill or mill site and never sold a mill or mill site; that he did not know of purchases or sales of mill sites; that he had examined the land of the petitioner in question with reference to forming an opinion as to its availability for a site for a mill

for bleaching, dyeing, cleansing, and printing; that it was a very fine spot for a mill of that kind, on account of the supply of water which it had and the fact that the land of the petitioner was land lying below the head of the water, giving sufficient room for buildings, so that the water could flow through without pumping; that, from his experience, he knew what the value of a place of that kind is as a site for a mill for bleaching, dyeing, cleansing, and printing; that he had made no investigations in the neighborhood or elsewhere as to what the value of this site was for a mill of the kind described, or as to the value of this combination of land and water, but he had his own opinion about it from his own experience.

The court ruled: "If the witness states that he is familiar with the values of properties of this sort, of this kind, although for a particular purpose, I do not think his testimony incompetent. I think if he can say that he is familiar generally with the value of property of this kind, that he may testify." The witness was then asked: "Please state in your opinion what is the value of that combination there, that land and water there. What is the value, the fair market value of this combination of land here with the water power for the purposes of a printing business?" and answered, "I should think that with that amount of land, with that combination of land and water, that $50,000 would be a very low price for it." The defendant excepted to this question and answer.

The defendant is right in his contention that the damages must be measured by the injury to the fair market value of the plaintiff's land at the time of the taking; *Providence & Worcester Railroad* v. *Worcester*, 155 Mass. 35; *Moulton* v. *Newburyport Water Co.* 137 Mass. 163; and he is also right in his contention that where similar land is commonly bought and sold, the testimony of a witness, when found by the presiding justice to be competent to testify to its value, should ordinarily be limited on direct examination to giving a direct answer to the question, What is its fair market value, in view of all the purposes to which it is naturally adapted? *Manning* v. *Lowell*, 173 Mass. 100. The defendant is also right in his contention that ordinarily the proper way to qualify a witness as a witness to value of property is to show that he is familiar with sales of similar property and the prices paid therefor. *Lyman* v. *Boston*, 164 Mass. 99.

But cases sometimes arise involving injury to property which is not commonly bought and sold ; in a case involving injury to such property, to confine the owner of it to witnesses who show themselves qualified to testify to its value by their knowledge of sales of similar property, would be to deny the owner the right to prove what the true value of his property was. The market value of a piece of property is its value in view of all the purposes to which it is naturally adapted; that means that its market value if it is unoccupied is fixed by its value for the most valuable of those purposes. When an injury is done to property which is not commonly bought and sold, and a case arises in which the amount of that injury must be ascertained, it is proper to allow testimony to be given of its value for the special purpose for which it is used, and to allow that testimony to be given by persons who show themselves qualified to testify thereto from knowledge derived from experience in their own business in which they have dealt with similar property. The value of land actually used for manufacturing purposes is an illustration of property of this description, and testimony of persons to its value for manufacturing purposes was admitted in *Lowell* v. *County Commissioners,* 146 Mass. 403, though the persons testifying had no knowledge of purchases or sales of similar land and were qualified to testify as they did solely from knowledge derived from their experience as manufacturers. For similar cases, see *Warren* v. *Spencer Water Co.* 143 Mass. 155, and *Manning* v. *Lowell,* 173 Mass. 100.

And so when it was proved that the land in question in the case at bar is by nature adapted for use as a mill site for dye-works or for a print-mill, it was proper for the presiding justice in his discretion to allow testimony to be given as to its value for such purposes, by persons who have been shown to be qualified to testify thereto by knowledge thereof derived from experience in that business, though the land was not then used therefor. To exclude such evidence would be to deny to the owner the power of proving the real value of that property ; no one can testify to that value by knowledge derived from the sale of lands in the neighborhood; they are not similar lands; nor by sales of mill sites for such purposes, for mill sites are not commonly bought and sold. Evidence of the value of the prop-

erty as a mill site for such purposes, given by persons who have knowledge thereof derived from experience in that business, must be admitted from the necessity of the case.

But such testimony is objectionable as not being directly responsive to the question to be passed upon by the jury, namely, What is the injury to the fair market value of the property in view of all the purposes for which it is adapted by nature, including the specific purpose testified to, to which it has not in fact been devoted? By reason of its not being directly responsive, and by reason of the land not being in fact devoted to the specified purpose, such evidence raises many issues which, if it were possible, should not be raised. It is also objectionable because it may come as a surprise to the other party, who may have failed to anticipate that the case was an exceptional one, and who for that reason may not be prepared to meet any, but direct, evidence of the market value of the land as shown by purchases and sales in the neighborhood. For these reasons, the usual rule should be departed from and testimony of this kind admitted only when without it it is impossible to prove the value of the property in question.

The defendant also contends that the question which the witness answered was the value of the land as a mill site, independent of the locality, and that such a question is, at the least, inadmissible. But no such question was put to the witness, and there is no reason to suppose that the witness supposed he was answering such a question. Counsel for the petitioner did at one point in the preliminary examination of the witness say to him: "What I am getting at here is the value of that supply of water in connection with the land — what is the value of that combination? I mean that value which is independent of the neighborhood which lies behind it. Its value for manufacturing purposes." But after that question eighteen questions were put to the witness and a discussion by counsel ensued before the court ruled that the witness was qualified to testify to value and before the question as to the value of the petitioner's land stated above was put to him. Under these circumstances, we do not think that the question ultimately put could have been understood by the witness as having been qualified by this statement made by the counsel in the preliminary examination.

*Exceptions overruled.*