MEISEL PRESS MANUFACTURING CO. *vs.* CITY OF BOSTON.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

Suffolk.    May 16, 1930. — July 21, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Damages*, For property taken or damaged under statutory authority. *Evidence*, Inference, Competency. *Eminent Domain*. *Deed*, Delivery. *Boston*, Extension of rapid transit under St. 1923, c. 480. *Practice, Civil*, Charge to jury, Exceptions.

St. 1923, c. 480, authorizing the city of Boston to acquire, under G. L. c. 79, a right of way for rapid transit in part in the location of certain main line railroad tracks, provided that the railroad corporation should be entitled to compensation, which, if it and the city so agreed, might be paid to it in "land . . . structures, materials or labor, including alterations . . . of the main line as may be necessary and proper to put said . . . [railroad corporation] in as good position as . . . [it now is] for conducting . . . [its] business . . ."; and that the rapid transit facilities should be so constructed as to provide the railroad corporation with "suitable freight connections with the sidings and freight yards now in use." Acting under that statute, the city took by eminent domain a portion of said railroad location and also a strip from a parcel of registered land bordering thereon. The instrument of taking contained no express reservation to the owner of the land

of rights to spur track facilities between the location and his remaining land. At the trial of a petition by the landowner against the city for the assessment of damages resulting from the taking, evidence was admitted that, after the taking, the respondent constructed on the strip of land taken a freight siding running the entire length of the petitioner's remaining land and connecting with the main line of the railroad corporation; that the siding was completed about eighteen months after the taking; and that the freight sidings in use before the taking remained in use during the period of construction, except for a short time. There also was admitted in evidence a document, dated and recorded several years after the taking, whereby the city conveyed or agreed to convey to the railroad corporation the land upon which the new siding had been built. A representative of the city testified that such instrument was made upon the completion of the siding and represented the compensation paid by the city to the railroad corporation for the taking. Evidence was admitted as to the value of the petitioner's remaining land upon the assumption that he was entitled to siding or spur track facilities. *Held,* that

(1) St. 1923, c. 480, required the city to put the railroad corporation in as good a position for conducting its business as it had been before the taking, by providing it with suitable side track facilities to replace those taken: the only matter in this regard left to be determined by agreement of the city and the railroad corporation was whether compensation to the railroad corporation should be made in money or by "land . . . structures, materials or labor";

(2) Such a construction of St. 1923, c. 480, did not "read an exception" into the uniform system of procedure for the taking of land provided by G. L. c. 79, even though the instrument of taking did not reserve the right to side track facilities to parties having such rights before the taking;

(3) Although the parties' rights were fixed as of the time of the taking, the side track privileges secured to the railroad corporation by St. 1923, c. 480, were a part of those rights: the subsequent construction of the siding by the city was in recognition of an obligation resting upon it and was not the mere granting of a privilege;

(4) The petitioner suffered no detriment as a matter of law by reason of the circumstance that his land, after the taking, abutted only on the siding, whereas previously it had abutted on the main line railroad tracks: in view of the above construction of said c. 480, and of his right under G. L. c. 160, § 117, to petition the department of public utilities in the event of the railroad corporation's refusing to provide switch connection between the new siding and a spur track running to his remaining land, the possibility that such a spur track might not be built or connected was too remote to be considered an element of damages;

(5) There was no error in the admission of the evidence as to the construction of the new siding and the continued use of the old facilities until its completion, nor in the admission of evidence as to the value of the petitioner's remaining land on the assumption that he was entitled to siding or spur track facilities;

(6) The testimony by the city's representative warranted an inference that the instrument conveying or agreeing to convey the new siding was delivered by the city and accepted by the railroad corporation;

(7) That instrument properly was admitted in evidence;

(8) The time when that instrument was given, and the circumstance that it was not registered as required by G. L. c. 185, did not make it inadmissible;

(9) The taking by the city for rapid transit purposes was for a public purpose;

(10) The taking by the city of sufficient land to avoid loss of railroad accommodations and the conveyance of the siding to the railroad corporation did not constitute an acquisition of land with public money for the purpose of sale in whole or in part to private persons;

(11) There was no error in the exclusion of evidence that, before the taking, the petitioner had applied to the railroad corporation for spur track facilities to buildings which he contemplated erecting, but which were not in existence at the time of the taking; and that the railroad corporation orally had agreed to furnish such facilities;

(12) No error appeared in a portion of the charge to the jury to the effect that there was no evidence that the petitioner had applied to the city's representatives for a siding: the absence of such application might be considered on the question whether the city should have furnished new side track accommodations before the new siding was completed;

(13) The judge properly excluded a lease of part of the petitioner's land for a term of ten years, executed before the taking and providing that the petitioner should erect a building thereon and that the lessee should purchase the land before its termination: the agreements in the lease, although binding on the parties, were not evidence of the value of the land at the time of the taking;

(14) The judge properly excluded evidence that at one time the representatives of the city had requested of the petitioner copies of plans of his land and of the building which he contemplated erecting thereon, and that he had submitted plans showing such proposed improvement; the contents of such plans, otherwise inadmissible, should not thus be put in evidence indirectly.

Subject to the petitioner's exception, the judge at the trial of the petition above described refused to rule that the petitioner was entitled to damages for loss of side track privileges from the time of the taking to the time of delivery and recording of the instrument conveying the new siding to the railroad. The judge charged the jury: "Now there was a delay and if that can be considered, you can consider that, with every other part of the case. There isn't any dispute now so far as the evidence goes that some time after the taking . . . there was . . . [a side] track which the . . . [city] put there for the purpose of giving track facilities to the . . . land owners. . . . The . . . [city] conceived that to be their power and duty under that act." The jury found for the petitioner in a substantial sum. *Held*, that

(1) The petitioner was entitled to compensation for being deprived, even temporarily, of spur track facilities;

(2) Nevertheless, in view of the charge to the jury, it must be assumed that, if the jury found that the petitioner suffered any damage by reason of delay in the construction of the new siding, they included such damages in their verdict;

(3) The exception must be overruled.

There was evidence at the trial above described that the changes caused by the taking by the city shut off certain drains which had carried surface water from the petitioner's land. Subject to the petitioner's exception, he was required to testify on cross-examination that the city constructed a new sewer after the taking; that he connected his remaining land therewith; and that his land was no drier thereafter than it had been before the taking. The trial judge at the petitioner's request instructed the jury that, as no drainage rights had been reserved to the petitioner by the instrument of taking, his damages "must be assessed as though no such rights existed." *Held,* that

(1) It must be assumed that the jury followed the instructions;

(2) The exception must be overruled.

It appeared at the trial above described that the petitioner's land was adapted to business purposes. The jury took a view thereof. *Held,* that there was no error nor abuse of discretion in excluding evidence as to a certain use to which the petitioner intended to put the land taken from him or his remaining land.

SEVEN PETITIONS under G. L. c. 79, § 14, filed in the Superior Court on November 6, 1925, for the assessment of damages resulting from takings of the petitioner's land by the respondent under the authority of St. 1923, c. 480.

The petitions were tried together before *Sisk,* J. Material evidence, portions of the judge's charge and exceptions saved by the petitioner are stated in the opinion. The jury found for the petitioner in the sum of $22,112.17, under the stipulation described in the opinion. The petitioner alleged exceptions.

*V. J. Loring,* (*W. B. Grant* with him,) for the petitioner.

*J. P. Lyons,* Assistant Corporation Counsel, for the respondent.

SANDERSON, J. Seven petitions for land damages were tried together with a stipulation that the entire damages found by the jury in the actions should be entered as the verdict in one of the cases, and that a verdict of $1 should be entered in each of the remaining actions.

The purpose of the takings was to provide for the extension of rapid transit facilities in the Dorchester district of Boston under the provisions of St. 1923, c. 480. The

petitioner's land adjoined the location of the main line railroad tracks of the New York, New Haven and Hartford Railroad Company, lessee of the Old Colony Railroad Company, between Andrew Square and Harrison Square in Boston, and, by the taking, made under G. L. c. 79, the city gained a right of way for a line of surface railway over a portion of this location between the two squares, acquiring therefor title in fee and easements in land of the petitioner. The land taken was bounded by the railroad location and was about eighty feet in width for a part of the way and thirty-nine feet in width for the rest, being a part of a larger parcel owned by the petitioner which had been registered in the Land Court. This strip for a part of its length was between the railroad location and land which the petitioner previously had sold. Over a part of the land taken a spur track had been extended to the parcel which had been so sold. There was evidence that the narrower part of the land taken had been reserved by the petitioner for car storage and for freight spur tracks to the petitioner's larger lot adjoining it at one end, but subject to the right of the adjoining owner to maintain a spur track over it. Before the taking a track could have been built connecting the petitioner's remaining land with the freight spur track previously constructed. The instruments of taking purported to give the respondent title in fee to the land lying between the railroad location and the petitioner's remaining land, and there was no express reservation in any of the instruments of rights to the petitioner.

After the taking the respondent constructed upon the portion of the land taken adjoining the petitioner's remaining land an industrial siding running the entire length of the petitioner's remaining land and connecting with the main line of the railroad company. This was completed about eighteen months after the taking and during that period, except for a short time, the freight sidings existing before the taking remained for use. Subject to the petitioner's exceptions, evidence was introduced as to this industrial siding and as to the freight connections

before and after the taking and during the time the work was being done, and witnesses were permitted to give their opinions as to the value of the petitioner's remaining land upon the assumption that its owner was entitled to siding or spur track facilities. Subject to the petitioner's exception the respondent was permitted to introduce in evidence a document recorded in 1929, when the case was on trial, by which the respondent conveyed or agreed to convey to the New York, New Haven and Hartford Railroad Company the part of the land taken upon which the industrial siding had been built. The petitioner also excepted to the refusal of the judge to allow its motion, made at the close of the evidence, to strike out all of the respondent's evidence regarding the new industrial siding.

St. 1923, c. 480, § 2, provides, in part, that, if the line of surface railway shall run over the location or a portion thereof of the main line railroad tracks between Andrew Square and Harrison Square, the city should acquire a right of way therefor from the railroad companies, either by purchase or by eminent domain, under chapter 79 of the General Laws, and in case of the latter, that the railroad companies would be entitled to compensation for any injury to their property to the same extent as private persons from whom takings may be made, and that the compensation might be "made in whole or in part in land, bridges, structures, materials or labor, including alterations on said portion of the main line as may be necessary and proper to put said railroad companies in as good position as they now are for conducting their business, if the parties so agree. The portion of said line of surface railway which may be located upon said main line right of way shall be so designed and constructed that the said railroad companies, or their successors, shall have suitable freight connections with the sidings and freight yards now in use." The petitioner contends that the act does not give it the rights to an industrial siding, and that if it did give such rights the instrument of taking did not reserve them.

The apparent purpose of the adoption of G. L. c. 79 was

"to provide a uniform system of procedure, so that everybody concerned will know how to take land by eminent domain and how to ascertain whether·land or any interest therein has been seized under the power of eminent domain. Exceptions cannot easily be read into such a statute. . . ." *Watertown* v. *Dana,* 255 Mass. 67, 71–72. But it would not be reading an exception into this statute to hold that the Legislature by the act of 1923 secured spur track rights to parties having them before even though not mentioned in the instrument of taking. We construe this act to require that the railroad companies should be given suitable freight connections with the sidings and freight yards in use at the time of the taking, and that when the side track facilities over the petitioner's land were taken away others would be provided. See *New York, New Haven & Hartford Railroad* v. *Blacker,* 178 Mass. 386. We also construe the act to require that the railroad companies shall be put in as good position for conducting their business as they were in at the time of the taking, and that the only matter intended by the terms of the section under consideration to be dependent upon agreement of the parties was whether the compensation to which the railroad companies were entitled under the act for land acquired should be in money or "in whole or in part in land, bridges, structures, materials or labor."

It would seem that the petitioner would be as well off as before so far as freight privileges are concerned if it has the same right to connect with and to use the railroad siding constructed and now controlled by the railroad company as it had before the taking to connect with the main line of the railroad. The act did not specify how the freight siding privileges should be provided, but the petitioner's right to a siding if needed for its remaining land was secured to it by the act whether the city continued to hold title to the land over which the siding was constructed or conveyed title thereto to the railroad company. The manner in which the right might have been enforced if the city had not undertaken to convey to the railroad company its title to the industrial siding need

not be considered for with the railroad company now in control of it the petitioner would have the rights given it by G. L. c. 160, §§ 116, 117, if occasion for acting thereunder should arise. With these rights reserved to the petitioner we find no error in the rulings admitting evidence as to the continued use of the old sidings until the new one was constructed, as to the location of the new siding along the side line of the petitioner's land, nor in the admission in evidence of the deed conveying or agreeing to convey to the railroad company the land upon which the industrial siding was located, even though the instrument was not recorded until September 27, 1929. It bore the date of January 2, 1929, and was said to have been made upon completion of the work. It purported to have been executed in consideration of and to carry out an agreement made with the railroad companies six months after the taking, and to convey to the railroad company the industrial siding and the easement for sloping connected therewith. There was evidence that the conveyance was made to give the railroad companies facilities equal to those taken from them.

The rights of the parties were fixed at the date of the taking. *Ham* v. *Salem,* 100 Mass. 350. *Imbescheid* v. *Old Colony Railroad,* 171 Mass. 209, 210. *Flagg* v. *Concord,* 222 Mass. 569. But a part of those rights was the spur track and siding privileges secured in the act. The construction of the industrial siding was in the nature of a recognition of an obligation and not the granting of a privilege.

The petitioner contends that the judge erred in refusing to give its request numbered twenty to the effect that, if the court rules as matter of law that by the delivery and recording of the deed to the railroad company the petitioner has a right of access to the industrial siding equal to the side track facilities which it had before the takings, the jury be instructed that the petitioner is entitled to damages for loss of side track privileges from the date of the takings until the delivery and record of the deed to the railroad company September 27, 1929.

It is undoubtedly true that if a person whose land is taken is deprived even temporarily of spur track facilities which he previously has enjoyed, this would be an element of special damage for which he might recover reasonable compensation. *Penney* v. *Commonwealth,* 173 Mass. 507. *Bailey* v. *Boston & Providence Railroad,* 182 Mass. 537. *Munn* v. *Boston,* 183 Mass. 421, 423. But it does not appear that the petitioner ever made use of the spur track facilities previously existing or that it requested the respondent to construct for it any freight track connection before the industrial siding was completed. The judge said in his charge: "Now there was a delay and if that can be considered, you can consider that, with every other part of the case. There isn't any dispute now so far as the evidence goes that some time after the taking, the several takings, there was an industrial track which the Rapid Transit Commission in behalf of the city of Boston put there for the purpose of giving track facilities to the industrial land owners on the south side of that track. The Boston Rapid Transit conceived that to be their power and duty under that act." Under this charge we think that it must be assumed that if the jury found that any damage was suffered by the petitioner because of the delay before the industrial siding was constructed they included such damages in the amount awarded.

The petitioner contends that the present spur track facilities are less valuable than those which it enjoyed before in that before the taking its land abutted on the main line and now abuts only on a freight siding, and for the further reason that it may be a question whether the railroad company will give any spur track facilities to one of its lots which was separated by the taking from the rest; and that it should be compensated for this difference in value. But it appeared in evidence that the new siding ran by this lot and that a track could be built from it which would require that cars be run up and switched back. A witness testified that he did not know whether or not the railroad company would make this connection. In case of the refusal of the railroad company to make

switch connection the petitioner could petition the department of public utilities under G. L. c. 160, § 117. Under these circumstances the possibility that a spur track might not be built from the siding bounding on it into the lot in question was too remote to be considered as an element of damage.

Upon our construction of the act authorizing the taking, the siding and freight yards in use at the time were to be connected with the main lines of the railroad companies and provision of some kind would be made so that the petitioner's land formerly bounding on the railroad location would after the taking have freight facilities if needed equivalent to those enjoyed before. Under the circumstances the fact that the land no longer abutted on the main line of the railroad but on the line of its industrial siding is not in law a detriment to the petitioner. The jury must have understood from the evidence admitted that the petitioner continued to have the right to side track facilities in its use of its remaining land.

The contention that there is no evidence that a deed was delivered to or accepted by the railroad company cannot be maintained. The inference of such delivery was justified upon the testimony of the chairman of the Boston transit commission to the effect that the deed of conveyance was made upon completion of the work, and that it was the compensation paid the railroad companies, as authorized by the statute, for what was taken from them. A taking for the purpose of obtaining for the public better rapid transit facilities is a taking for a public use and if, as incident to such taking, the public would otherwise be deprived of certain railroad accommodations, the public interest would justify authorizing the city to take enough land so that such loss of railroad accommodations might not result. This would not be the acquiring of property with public money, to sell in whole or in part to private individuals, within the meaning of the rule stated in *Opinion of the Justices*, 261 Mass. 556, 612. The railroad company is a corporation with public duties and with authority under specified conditions to take property by

eminent domain. The deed was admissible even though it had not been registered, and for that reason operated only as a contract between the parties authorizing registration. G. L. c. 185, § 57.

The president of the petitioner, having testified that the taking shut off two drains which had carried the surface water from its land, said, in answer to a question asked in cross-examination, that after the new sewer was put in by the city a connection was made with it. After the answer was given, counsel for the petitioner stated that he excepted to evidence of anything done after the taking. The witness then stated that the connection was made with the sewer because the changes caused by the taking cut off the culverts. He also testified that the petitioner's land by the tracks was no drier after the taking than before; and that the petitioner itself had to make the entrance to the sewer. It appears by one of the instruments of taking that an easement in a strip of the petitioner's land eight feet in width was acquired for the purpose of constructing and maintaining a sewer adjoining the land taken by the respondent in fee on the same day. There was testimony that this sewer was built not to drain the petitioner's land, but because another sewer had been cut off, and that it was possible to use the new sewer for such drainage. The judge charged the jury at the petitioner's request that, as no drainage rights had been reserved or provided for in the takings, "the petitioner's damages must be assessed as though no such rights existed." We must assume that the jury followed these instructions. Such exceptions as the petitioner saved to the admission of evidence concerning the connections which were in fact made with the new sewer must be overruled.

The exception to the ruling excluding testimony as to the use which the petitioner intended to make of the land taken or of its remaining land must be overruled. Fair market value does not mean special value to the owner. *Sargent* v. *Merrimac*, 196 Mass. 171. In *Maynard* v. *Northampton*, 157 Mass. 218, 219, the court said: "In determining the damages . . . the jury should consider

not only the value of the property taken, but also the effect of the taking upon that which is left; and in estimating the value of that which is taken they may consider all the uses to which it might properly have been applied if it had not been taken. In like manner, the effect on that which is left should be estimated in reference to all the uses to which it was naturally adapted before the taking. Damages are not to be awarded in reference to the peculiar situation or circumstances or plans of the owner, or to the business in which he happens to be engaged; but any and all of the uses to which the land considered as property may profitably be applied, whether contemplated by the owner or not, may well be taken into the account by the jury." *Pinkham* v. *Chelmsford*, 109 Mass. 225, 228. *Fairbanks* v. *Fitchburg*, 110 Mass. 224. *Burt* v. *Wigglesworth*, 117 Mass. 302, 306. See also *Fosgate* v. *Hudson*, 178 Mass. 225; *Wellington* v. *Cambridge*, 220 Mass. 312; *Cotton* v. *Lexington*, 261 Mass. 169, 174. If there was an element of discretion involved in the ruling to which objection was made we find no abuse of discretion. *Maynard* v. *Northampton*, 157 Mass. 218, 220. *Sargent* v. *Merrimac*, 196 Mass. 171, 174. See *Vineyard Grove Co.* v. *Oak Bluffs*, 265 Mass. 270, 277. The facts do not bring the case at bar within the principle of the cases in which value for a special purpose may be shown when there is no other way of proving value. *Cochrane* v. *Commonwealth*, 175 Mass. 299. *Conness* v. *Commonwealth*, 184 Mass. 541. That the land was adapted to business purposes did not seem to be in dispute. The jury took a view and could consider all obvious facts as to its location, surroundings and adaptability for use.

There was no error in excluding evidence that at the time of taking the petitioner had applied to the New York, New Haven and Hartford Railroad Company for side track facilities reaching from the spur track to buildings to be constructed, and that the same had been agreed to. All testimony offered relating to side or spur tracks actually constructed was admitted. The evidence excluded was based upon an oral agreement concerning a siding in con-

nection with a building or buildings not in existence. No prejudicial error appeared in the part of the charge to the effect that there was no evidence to show that the petitioner had made application to the rapid transit commission concerning a siding. The absence of such application might be considered on the question whether the respondent should have furnished new side track accommodations before the industrial siding was completed. After the delivery of the instrument purporting to convey the industrial siding to the railroad company, the petitioner's rights as a shipper of freight were protected by G. L. c. 160, §§ 116, 117, which contemplate action after the shipper's application has been filed.

The lease dated January, 1923, for the term of ten years, of a part of its land made by the petitioner, with provision that the lessor should erect a building, and also containing the clause, the "Lessor . . . agrees to sell and the . . . Lessee agrees to purchase said . . . land and buildings on or before the termination of said Lease, but not before January 1924," was rightly excluded as evidence of value. The fact that the sale might not be consummated until 1933 and would include a building to be erected made this agreement (although binding and enforceable) inadmissible as evidence of the value of the land at the time of taking. The facts distinguish the case at bar from *Manning* v. *Lowell,* 173 Mass. 100, 104.

The petitioner offered to prove that the transit commission at one time requested of it copies of the plans of its land and of the proposed buildings which it contemplated putting thereon, and that in compliance with this request it submitted plans to the commission showing the proposed improvements about to be placed upon the land. For reasons already stated, the evidence as to the petitioner's plans for buildings and improvements was properly excluded, and the evidence could not be introduced in this indirect way. It did not appear from the offer that spur track facilities were requested or that the respondent should have earlier constructed a siding because

of the knowledge gained by the commission as to the petitioner's plans.

We have examined all exceptions argued and are unable to find reversible error in any of them.

*Exceptions overruled.*