JOHN VALENTINO & another vs. COMMONWEALTH.

Worcester.   September 22, 1952. — October 31, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Eminent Domain*, Damages.   *Damages*, Eminent domain.

In assessing damages under G. L. (Ter. Ed.) c. 79, § 12, for a taking by
    eminent domain of a strip of a parcel of land for the widening of a
    highway, which brought the line of the highway close to the pumps
    of a gasoline filling station located on the parcel, the estimated ex-
    pense of moving the filling station back from the highway was not
    to be considered by the jury on the issue of the difference in the market
    value of the parcel before and after the taking where it did not appear
    that any physical change or change in the conduct of the filling station
    resulted from the taking or that moving the filling station back was
    reasonably necessary to adapt the remaining portion of the parcel to
    the situation left by the taking.

PETITION, filed in the Superior Court on February 18,
1947, for assessment of damages for a taking by eminent
domain.

The case was tried before *Hudson, J.*

*Nunziato Fusaro*, for the petitioners.

*Francis E. Kelly*, Attorney General, & *William S. Kinney*,
Assistant Attorney General, for the Commonwealth, sub-
mitted a brief.

RONAN, J.  The Commonwealth on April 10, 1946, took
a strip of land, about 220 feet long and varying in width
from six feet to nine feet, of the petitioners' lot of land
upon which were located a dwelling and a gasoline filling
station.  The filling station, a wooden structure twenty
years old, rested on a cement foundation.  It was twelve
feet wide and thirteen feet deep.  It was covered by a four
sided roof, and a wooden canopy extended from the front
roof toward the street and over two gasoline pumps set in
a cement base.  The taking came close to the outer edge of

this cement base. There was evidence that before the taking automobiles refueled by driving up to either the station side or the street side of the gasoline pumps. Since the taking they have continued to secure a supply of gasoline in the same way. The only difference is that now an automobile on the street side of the pumps rests upon a part of the highway while receiving gasoline, while prior to the taking it rested upon land of the petitioners. There was evidence upon the part of the petitioners that it is desirable to move back the filling station from the street and that this work would cost $1,100. The judge, subject to the exception of the petitioners, instructed the jury that, if no part of the canopy or base of the pumps was taken, they should not consider as an element of damages the estimated expense of moving back the gasoline station.

The judge correctly instructed the jury that the petitioners were entitled to recover the difference in the market value of their land before and after the taking. This was in accordance with the statute, G. L. (Ter. Ed.) c. 79, § 12, which provides that "in case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made." This general rule for the determination of land damages is well established in this Commonwealth. *Edmands* v. *Boston*, 108 Mass. 535. *Wright* v. *Commonwealth*, 286 Mass. 371. *Goodyear Park Co.* v. *Holyoke*, 298 Mass. 510. *Barnes* v. *Commonwealth*, 305 Mass. 339. *United States Gypsum Co.* v. *Mystic River Bridge Authority*, *ante*, 130. The question is whether, in applying this rule of damages, the jury should have been allowed to consider the cost of the proposed removal of the filling station. Access to and egress from the filling station remain open and available. Indeed, the only difference is that the highway has been brought nearer to the station. The petitioners could not be and have not been cut off from their right of entering the way or going from the way to their land. *Anzalone* v. *Metropolitan District Commission*, 257 Mass. 32, 36. *Gleason* v. *Metro-*

*politan District Commission,* 270 Mass. 377, 380–381. *Gustat* v. *Everett,* 278 Mass. 1, 3.[1]

The petitioners contend that the locus outside the pumps has now become a part of the highway; that the use of it for the purpose of selling gasoline from the pumps to automobiles beside the pumps constitutes a public nuisance; and that they will be compelled to refrain from conducting their business in this manner. The record does not support these fears of the petitioners. The monthly rent from the filling station has continued at an average of $60, which was the rate before the taking. It is based on one cent on each gallon of gasoline sold. Nothing that the Commonwealth has done in widening the way has caused any decrease in the rent, and nothing that the operator of the filling station has done in conducting the business since the taking on April 10, 1946, has been shown to have increased traffic hazards. There is not a scintilla of evidence that those in charge of the highway do not consider traffic conditions satisfactory in the vicinity of the filling station, much less that they intend to restrict the business by forbidding the refueling of automobiles on the highway side of the pumps.

The petitioners are not entitled to prospective expenses which were not the immediate or proximate result of widening the highway nor for a change which did not come into existence upon the completion of the taking and which may never come into existence. In *Massachusetts Central Railroad* v. *Boston, Clinton & Fitchburg Railroad,* 121 Mass. 124, the contention of a railroad, that it should be allowed damages because of the risk that the county commissioners, when in their judgment the safety of the public might demand, might require the railroad to install additional safeguards, was denied. See *Cushing* v. *Boston,* 144 Mass. 317, 319–320. An expense arising from adapting the remaining

---

[1] As to takings cutting off access to limited access State highways, depriving abutters from maintaining filling stations, restaurants and wayside stands, see G. L. (Ter. Ed.) c. 81, § 7C, inserted by St. 1943, c. 397, as amended by St. 1949, c. 583, and St. 1950, c. 829.

land to the conditions in which it was left by a taking may be considered not as a particular item of damage but as tending to show the difference between the market value of the parcel of land before and after the taking, *Bemis* v. *Springfield,* 122 Mass. 110, *Butchers' Slaughtering & Melting Association* v. *Commonwealth,* 163 Mass. 386, *Manson* v. *Boston,* 163 Mass. 479, *Wooley* v. *Fall River,* 220 Mass. 584; but evidence of such expense is not admissible except only where it is made to appear as a reasonable and economical method of dealing with the land in making changes thereon which were reasonably necessitated by the taking. That does not appear here. *Chase* v. *Worcester,* 108 Mass. 60. *Drury* v. *Midland Railroad,* 127 Mass. 571, 584–585. *May* v. *Boston,* 158 Mass. 21, 31. *Meisel Press Manuf. Co.* v. *Boston,* 272 Mass. 372, 381. *Andrews* v. *Cox,* 127 Conn. 455.

*Exceptions overruled.*