JOSEPH L. KENNEDY & another *vs.* COMMONWEALTH.

Norfolk.   May 7, 1957. — June 4, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Evidence*, Relevancy and materiality, Of value.   *Eminent Domain*, Damages.   *Damages*, Eminent domain.

In an assessment of damages for a taking by eminent domain, for a street widening, of a strip of a lawn of residential property which, near the street, sloped down abruptly several feet to the street level, where there was evidence that the lawn adjacent to the strip taken had become eroded after the widening and the loam had washed down, exposing gravel upon which grass would not grow, expert testimony to show the method and expense of a reasonably necessary and economical adaptation of the premises to the situation left by the taking, including the construction of a retaining wall, should have been admitted as bearing on the diminution in value caused by the taking.

PETITION, filed in the Superior Court on December 30, 1954.

The case was tried before *Morton*, J.

*Joseph P. Rooney*, for the petitioners.

*George Fingold*, Attorney General, *& Floyd H. Gilbert*, Assistant Attorney General, for the Commonwealth, submitted a brief.

RONAN, J. This is a petition by a husband and wife, as tenants by the entirety, for the assessment of damages for a taking made of a part of their premises in December, 1953, in widening the corner of Brook Road and Adams Street in Milton. The jury returned a verdict of $1,250. The case is here on exceptions of the petitioners to the rulings of the trial judge in excluding evidence.

The house, a ten room structure designed for a doctor's office and a dwelling, is constructed of brick for the first story and of wood for the remaining one and one half stories. The house fronts on Brook Road. It is set back from both public ways. A lawn runs practically level from the house to within a foot or two of Brook Road and the corner where it slopes abruptly down about four feet to the level of the road. The property as shown by the photographs is attractively located. Besides the house the premises consist of a garage and land all having an assessed valuation of $10,100. There also was evidence that before the taking the premises were worth $26,500 and afterward $21,500.

The land taken comprised two hundred ninety square feet and was triangular in form, the base of this triangle running at a right angle to Brook Road into the lawn for nineteen feet, then the hypotenuse along Brook Road for thirty-six feet, and the third bound about thirty-one feet to the inner point of the base. The lawn had become eroded where it was adjacent to the taking. The top layer of loam had washed down exposing the under layer of gravel upon which grass would not grow.

The petitioners called one Hennessy whose qualifications as a civil engineer and a landscape contractor were undisputed. He testified that the bank is now steeper than appears in the photographs, the soil is eroded, the loam has been washed down and the subsoil exposed, and there is no growing grass on the area. He was not permitted to give

his opinion as to what would be reasonably necessary to restore the property to approximately its appearance before the taking. The judge observed that if the property was left in "a mess" the jury had taken a view, that there was no embankment wall before the taking, that there was no place for a landscape architect in a land damage case, and that this was the usual case where the damages were the difference in value before and after the taking. The petitioners offered to prove "that the area in the petitioners' property adjacent to the point taken and as left by the actual construction under the taking was such that the land would not bear vegetation of any kind; would constantly erode and gradually work back toward the petitioners' house; that to correct this condition it would be necessary to construct a retaining wall approximately four feet high which would prevent any further erosion; that the restoration would further involve the continuance of this wall across the front of the petitioners' property a distance of one hundred ten feet; that in connection with this wall considerable landscaping in the area adjacent to the wall would be necessary and that the fair cost of these items would be about $4,000."

There was error in the exclusion of the evidence.

If the evidence had been admitted, the jury could have disregarded it or they could have accepted the whole or any part of it in determining whether it was reasonably necessary and an economical method to make such a repair in adapting the premises to the new condition created by the taking. The evidence was competent as bearing upon the diminution in value caused by the taking and as corroborative of other testimony upon that issue. *Hartshorn* v. *County of Worcester,* 113 Mass. 111, 114. *Drury* v. *Midland Railroad,* 127 Mass. 571, 582. *Butchers' Slaughtering & Melting Association* v. *Commonwealth,* 163 Mass. 386. *Manson* v. *Boston,* 163 Mass. 479. *Meisel Press Manuf. Co.* v. *Boston,* 272 Mass. 372, 378. *Valentino* v. *Commonwealth,* 329 Mass. 367, 369–370.

*Exceptions sustained.*