## Lewis E. Fosgate *vs.* Inhabitants of Hudson.

Worcester.    January 9, 1901. — March 2, 1901.

Present: Holmes, C. J., Knowlton, Morton, Barker, & Loring, JJ.

In a suit for the assessment of damages for the taking of the petitioner's land and water rights by a town under a statute providing for the enlargement and improvement of its water supply, the petitioner sought to recover for injury to his pasture by the taking of the water of two brooks crossing it used by him for watering his cattle. It appeared that previously a pond adjoining the petitioner's pasture had been taken by the town as a water supply, reserving to the owners of the petitioner's land the right for their cattle to come to the pond to drink "and to otherwise enjoy the use of said pond in so far as the same shall not pollute or contaminate the purity of the water therein or unreasonably interfere with the use and enjoyment thereof by the town . . . as a reservoir to supply the inhabitants of said town with pure water." It further appeared that, with the waters of the brooks diverted, the pond was the only place at the pasture where the petitioner's cattle could be watered. *Held*, that the petitioner could ask witnesses, qualified as experts, whether in case the petitioner's cows going to the pond to drink should pollute the water and in consequence should be excluded altogether from the pond as a drinking place, the taking of the waters of the brooks would not be a serious injury to his pasture.

One through whose land a brook flows cannot wholly divert its waters, but must use them in such a manner as not materially to interfere with the flow of the water in the brook below.

Where a town, under a statute providing for the enlargement and improvement of its water supply, took certain land described and also took "all the water, water rights and water supply, flowing to or from the premises," this was held to include a brook which lay partly within the land taken and which flowed within the land into another brook.

In assessing damages for land taken by a town under a statute providing for the improvement of its water supply, although the damages are to be assessed as of the time of the taking, the owner may show the possibilities of the land for future use and the nature of such uses.

Petition to recover for taking land, water and water rights in the town of Berlin, in the county of Worcester, by the town of Hudson in the county of Middlesex, under and by virtue of the provisions of St. 1898, c. 222, filed June 26, 1899.

At the trial in the Superior Court, before *Stevens*, J., the following facts appeared: The taking was to enlarge and improve the respondent's system of water supply established under the provisions of St. 1883, c. 149.   St. 1898, c. 222, § 1, provides that the respondent town, to effect such "enlargement and improvement may take and hold in fee, by purchase or otherwise,

land in the town of Berlin situate on Fosgate brook, so called, a stream north from Gates pond in said Berlin, together with the water and water rights belonging to said brook or tributary thereto, may erect a dam on and across said brook, and by a pipe or aqueduct may conduct the water of said brook into said Gates pond, the water supply of said town of Hudson. For the purpose of laying said pipe or aqueduct the town of Hudson may take and hold as aforesaid land for such use."

On June 30, 1898, the town of Hudson took in fee thirty-seven and fifty-seven one hundredths acres of land belonging to the petitioner, with all the water and water rights thereon; and also a strip of land thirty feet wide in which to lay one or more pipes or aqueducts to convey the water to Gates Pond. This strip was not taken in fee, and the pipe line was not to be fenced.

The location contained the following words: " Also we do hereby take and hold in manner and form aforesaid, all the water, water rights and water supply, flowing to or from the premises above described, for the purpose of conveying the water by a pipe, pipes or aqueduct to Gates Pond, so called, in said Berlin, the same being the water supply of said town of Hudson."

On the petitioner's farm was a brook flowing through and out of the farm, called Fosgate Brook, and into Fosgate Brook, as a tributary, flowed Joslin Brook, forming a junction with Fosgate Brook at a point within the area taken by the respondent. This brook rose outside of the land of the petitioner, and flowed through it to its junction with Fosgate Brook.

There was evidence that after the taking of 1898 the respondent cleared out the channel of Joslin Brook, both in the petitioner's land and above and outside the taking.

Fosgate Brook, after its junction with Joslin Brook, flowed before the taking through the petitioner's pasture described below, and through his barnyard, in both of which places the petitioner had for a long time been accustomed to water his horses and cattle.

At the date of taking, the petitioner owned about one hundred and fifty-two acres of land, with a dwelling-house, barn and dairy-house thereon, and some twenty rods north from these

buildings, on the east side of the road, another barn, where he kept his cows. To this latter barn water was conveyed, and had been, since 1849, by a half inch lead pipe, from a well one hundred rods to the west, on high land included in the tract taken in fee by the respondent. A pasture to the south, containing some twenty acres, formed a part of this farm and bordered for a considerable distance on Gates Pond. This was conveyed to the petitioner in 1892. When Gates Pond, on June 4, 1884, was taken by the town of Hudson, under St. 1883, c. 149, as a water supply, the petitioner was not the owner of this pasture nor of any land bordering on Gates Pond. At that date John G. Fosgate, an uncle of the petitioner, and Marshall Fosgate were owners of the pasture and much of the rest of the farm. When the respondent took Gates Pond it took a strip of land around it, and a reservation was made to the eight owners of land bordering thereon as follows:

" The aforesaid premises are taken for the purpose of enlarging the area of said Gates Pond as occasion may require and for the purpose of preserving the purity of the water thereof in converting the same into said reservoir to supply the town of Hudson with water.

" In this taking, the reservation is expressly made to the eight landholders last above named, their heirs and assigns, for their cattle to come to said Gates Pond to drink and to the said owners, their heirs and assigns, to come to said pond to cut ice for domestic purposes and to otherwise enjoy the use of said pond in so far as the same shall not pollute or contaminate the purity of the water therein or unreasonably interfere with the use and enjoyment thereof by the town of Hudson aforesaid as a reservoir to supply the inhabitants of said town with pure water."

On April 22, 1885, John G. Fosgate and Marshall Fosgate, the petitioner's grantors, gave the respondent a quitclaim deed of their land taken under the act.

At the trial the petitioner contended, and there was evidence to show, that by the taking of 1898 of the thirty-seven and fifty-seven one hundredths acres he was deprived of a water supply; that the respondent had diverted the waters of Fosgate and Joslin brooks, below their junction, from the petitioner's pasture

and barnyard.   The petitioner contended that the deed of John G. Fosgate and Marshall Fosgate to the respondent, of April 22, 1885, deprived the petitioner from going to Gates Pond to water his cattle.   But the court ruled that the reservation referred to above was not lost by the deed of April 22, 1885, and that the petitioner as owner of the pasture was entitled to the enjoyment of the rights thereby reserved.

The petitioner also contended, and there was evidence to show, that by the diversion of the brooks his pasture and other land were wholly deprived of water, and that if the use of Gates Pond as a watering place for cattle should, in view of the fact that its waters were used for drinking and domestic purposes by the respondent, amount to a pollution or contamination of the purity of the water, and the petitioner, in consequence of such pollution, be shut off from watering his cattle there, the taking and diversion of the waters of the brooks would be a very serious damage.

One Hastings, an expert witness for the petitioner, was asked by the petitioner the following question: "Suppose that the going of the cows to the pond to drink, the wading in and standing in the water as cows sometimes do, pollutes the water of Gates Pond so that he would be cut off upon that ground from having his cows water at Gates Pond, what do you say would be the effect upon that land?"

The judge admitted this question against the objection of the respondent; and the respondent excepted.

The witness answered: "Practically that would destroy the land for a pasture altogether, without some means to supply some water."

One Lewis, a witness for the respondent, was asked on cross-examination by the petitioner the following question: "Suppose the town of Hudson has the right, if the use of Mr. Fosgate's cows of that drinking place pollutes the water, to prevent cattle from going there, and suppose, as I have, that the cows going in there does pollute it, it being water used for drinking purposes, and in consequence of its pollution his cows are shut off altogether from Gates Pond as a drinking place, then isn't the loss of that running stream through his pasture a serious injury?"

To this question the respondent objected. It was admitted by the judge, and the respondent excepted.

The witness answered : " Certainly, if cut off wholly from the pasture it would be a damage to it. According to the extent of the pasture and feed."

In his charge to the jury the judge gave the following instructions in regard to the rights of the petitioner in Joslin Brook :

" I assume from the evidence in this case that there is no dispute but that Joslin Brook was a natural stream and the riparian proprietors or people on the line or borders of that brook had the rights which riparian proprietors always have, and had the right therefore which this petitioner had in Fosgate Brook, so called, before the taking by the town of Hudson. He had the right and he has the right now to use the waters reasonably of Joslin Brook so far as he can do so without interfering with the rights of the town of Hudson or the riparian proprietors below him. He has not the right materially to diminish the flow of the water to which the owners below him are entitled, but he has the right to make a reasonable use of that water, so far as he may do it without materially interfering with the natural flow of the water to which the owners below, and the town of Hudson, who is the owner, are entitled. He has not the right to divert the waters of Joslin Brook for the purpose of selling such water, he has only the right to divert it so far as he may do so for the use of the farm and in such a manner as not to materially interfere with the flow of the water in the brook below."

After the charge, the respondent requested the judge to instruct the jury as follows : First, the petitioner has the right to divert the waters of Joslin Brook for all legitimate purposes in connection with his farm. Second, the town of Hudson, under the evidence, has not taken the waters of Joslin Brook and cannot interfere with the particular riparian rights therein.

The judge declined to give these instructions, in the form presented, and the respondent excepted.

The petitioner argued to the jury that he was entitled to have them consider, in assessing his damages, the possibilities to which his estate might be put in the future ; that is, possibilities for future development. The respondent asked the judge to in-

struct the jury: "The petitioner is not entitled to have damages assessed because of the possibilities of the future or a future development." This instruction the judge declined to give, and the respondent excepted.

The jury found for the petitioner and assessed damages in the sum of $5,226; and the respondent alleged exceptions.

*J. W. Corcoran & J. T. Joslin,* for the respondent.

*C. F. Choate, Jr.,* for the petitioner.

MORTON, J. This is a petition to recover damages for the taking of land, water and water rights by the respondent for the purpose of enlarging its water supply. The case is before us on exceptions by the respondent to the admission of certain evidence for the petitioner and to the refusal of the court to give certain rulings that were requested by the respondent.

The question in regard to evidence relates to the damages caused by the diversion of the waters of Fosgate and Joslin Brooks from the petitioner's pasture, barnyard and other land. The pasture extended to Gates Pond which the respondent had appropriated for a water supply by a former taking, and to which, under a reservation in that taking, the petitioner had a right of access for his cattle to come to drink and for other purposes, "so far as the same shall not pollute or contaminate the purity of the water therein or unreasonably interfere with the use and enjoyment thereof by the town of Hudson aforesaid as a reservoir to supply the inhabitants of said town with pure water."

The petitioner contended "that by the diversion of the brooks his pasture and other land was wholly deprived of water, and that if the use of Gates Pond as a watering place for cattle should, in view of the fact that its waters were used for drinking and domestic purposes by the respondent, amount to a pollution or contamination of the purity of the water, and the petitioner, in consequence of such pollution, be shut off from watering his cattle there, the taking and diversion of the waters of the brooks was a very serious damage." It was in support of this contention that the evidence objected to was admitted and we think that it was rightly admitted.

The petitioner was entitled to have the jury take into account the damage done to his land for pasturing and other purposes by

the diversion of the waters of the brooks.  As bearing upon that they necessarily would have to consider what other sources of water supply there were and their permanence and convenience or inconvenience as compared with those of which the petitioner was deprived by the taking.  The questions objected to did not assume a right on the part of the petitioner to pollute the waters of Gates Pond but only directed the attention of the witnesses to the damages which the petitioner would sustain by the diversion of the waters of the brooks if he were deprived on the ground of alleged pollution of the right of access to the waters of Gates Pond.  He would have no right to pollute the waters of the pond, but in the absence of statutory authority to that effect, or a reservation in its taking, the respondent would have no right to deprive him of access to the waters of the pond if he did pollute them.

The first ruling requested was that " the petitioner has the right to divert the waters of Joslin Brook for all legitimate purposes in connection with his farm."   This plainly was too broad.  Under it the jury might have found that the petitioner could divert the whole or the principal part of the waters of the brook, which, as against a lower riparian proprietor, which the town of Hudson was, he clearly could not do.   *Moulton* v. *Newburyport Water Co.*  137 Mass. 163.  The request was therefore rightly refused.   The instructions of the court were full and correct.

The second ruling requested was that " the town of Hudson, under the evidence, has not taken the waters of Joslin Brook and cannot interfere with the particular riparian rights therein."  This also was too broad.   Joslin's Brook was a tributary of Fosgate Brook and lay partly within the land that was taken and flowed into Fosgate Brook within such land.   The respondent took certain land described in its taking and also took " all the water, water rights and water supply, flowing to or from the premises above described," namely, the land taken.   Manifestly therefore this request could not have been given in the form in which it was presented and was rightly refused.

The petitioner argued to the jury that " he was entitled to have them consider, in assessing his damages, the possibilities to which his estate might be put in the future ; that is, possibilities for future development."

The respondent asked the court to instruct the jury : " The petitioner is not entitled to have damages assessed because of the possibilities of the future or a future development." The court, we think, rightly refused to give this request.

The petitioner was entitled to have all the damages assessed that were caused by the taking of his land, water and water rights. The damages were to be assessed as of the time of the taking. But in estimating them the jury were at liberty to take into account all the uses and capabilities to which it was then adapted or might be applied. *Teele* v. *Boston*, 165 Mass. 88, 92, 93. *Providence & Worcester Railroad* v. *Worcester*, 155 Mass. 35, 42. *Maynard* v. *Northampton*, 157 Mass. 218.

The possibilities of the land for future use at the time of the taking and the nature and purpose of such uses were therefore legitimate matters of inquiry and argument so far as they affected the present value.

*Exceptions overruled.*