CAREY T. KINNEY & another *vs.* COMMONWEALTH.

Berkshire. February 9, 1955. — April 29, 1955.

Present: QUA, C.J., RONAN, WILKINS, & COUNIHAN, JJ.

*Evidence,* Of value; Opinion: expert. *Value. Damages,* Eminent domain.

In assessing petitioners' damages for a taking by eminent domain by the respondent of a vacant part of a large tract of land having on it an old but modernized house, a barn, and various outbuildings, opinion testimony of an expert witness for the respondent as to values based on his assumption that the property was predominantly a home and not a farm was not inadmissible on the ground that it was based on an assumed fact of which there was no evidence where the opinion was formed through his own examination of the property and the jury took a view thereof; nor was the testimony inadmissible on the ground that it was evidence of value for a special use which could not properly be shown to diminish value.

PETITION, filed in the Superior Court on May 16, 1952.

The case was tried before *Hurley,* J.

*Frederick M. Myers,* for the petitioners.

*George Fingold,* Attorney General, & *Max Rosenblatt,* Assistant Attorney General, for the Commonwealth, submitted a brief.

COUNIHAN, J. The petitioners are husband and wife. They bring this petition under G. L. (Ter. Ed.) c. 79, §§ 12[1] and 14 (compare G. L. [Ter. Ed.] c. 81, § 7C), to recover damages for a taking of a parcel of land in Stockbridge by the Commonwealth, by eminent domain, for "an express highway." The taking was made on May 7, 1952. The petition was tried to a judge and jury who returned a verdict for the petitioners in an amount less than that which they sought. The jury took a view.

The case comes here upon an exception of the petitioners to the refusal of the judge to strike out the testimony of a real estate expert for the Commonwealth on which he based his opinion of the value of the land taken. There was no error. This is the only question before us.

On May 7, 1952, the petitioners were owners of a parcel of land consisting of one hundred five acres on which was an old dwelling house which had been modernized at considerable expense. It had oil heat and seven bathrooms. Attached to it was a one story building connecting with a garage. There were several other outbuildings used for storage of farm tools and hay. There were a chicken coop and a large barn which had stalls for four horses and for twelve head of Angus cattle. It is not entirely clear from the record that the dwelling house was used as a home by the petitioners but it appears to have been assumed that it was so used for at least part of the year.

The parcel taken consisted of about twenty-eight and one half acres. There were no buildings on it. The taking and the construction of the highway divided the larger area into separated parcels without direct access from one to the other. In order to get to the area north of the taking the petitioners would be required to expend $2,000 to improve a right of way which they had over land of others.

[1] See now St. 1953, c. 634, § 1.

The petitioners and their real estate expert contended that before the taking the land owned by them was used for farming purposes and that the taking left such a small area of land around the dwelling house, outbuildings, and barn that it could not be devoted to farming purposes but was suitable only as "a dwelling area." The male petitioner valued the premises before the taking at $50,000 and after at $18,000. Their real estate expert fixed these values at $47,000 and $18,900 respectively.

A real estate expert for the Commonwealth fixed these values at $27,500 and $23,500 respectively. When asked to give his reasons for his opinion he said, "I considered the location of the real estate; the size and topography of the property; the age, construction and condition of the property; the use to which the property was being put; the use . . . which the property had formerly in years gone by been used for; the use to which the property was adapted; the taking by the Commonwealth; the changes by the new highway; sales of somewhat comparable parcels of real estate; the assessed value. I considered that this was not a farm. That it was a home . . . which a man who was engaged in other lines of business could use for his hobbies. It was not a farm. The house was a big modernized two hundred year old dwelling with oil heat and seven baths. It belongs to a class of dwellings where people live who have other means of livelihood rather than the land — I considered the location. I considered it was on a road that was available to Pittsfield. The road that you could get out on. I considered it was a desirable place. I considered the type of land. I considered that there had been some planting of trees, of Christmas trees there, and I considered that was not an unusual condition on a farm where there is stony — where the stones are close to the soil, Christmas trees grow normally. They grow as part of the land. They are there without being planted. I considered sales of other properties in the vicinity. I considered the offerings through Western Massachusetts of somewhat typical properties, and after that I came to my conclusion as to the value before and

after the taking." On cross-examination he testified that his major assumption in forming his opinion on value was that the major use of the premises was as a home and not as a farm. The petitioners immediately asked that all of the evidence of this expert be struck out and, upon the refusal of the judge to do so, they duly took an exception.

There was evidence that the amount spent in remodeling the dwelling house was between $12,000 and $15,000 but there was no evidence of the amount of income, if any, received from farming operations.

The petitioners asserted no claim for damages under G. L. (Ter. Ed.) c. 81, § 7C. They relied solely on c. 79, §§ 12 and 14. In *Nichols* v. *Commonwealth*, 331 Mass. 581, at page 584, we recently said, "when there is only a partial taking [of an owner's land] . . . there is added to the fair market value of the land actually taken, any damage accruing to the remainder of the land not taken . . . ."

The petitioners principally contend that the evidence complained of should have been struck out because of what we said in *Charron's Case*, 331 Mass. 519, at page 523, "Such an opinion would be competent only if later evidence was introduced to prove the facts upon which the doctor relied in part at least. No such evidence later appeared, and it was then in order . . . to move to strike the opinion of the doctor in so far as it was based in any way upon facts not proved." But the evidence in the case at bar is distinguishable from that in *Charron's Case*. There the opinion of the witness was based partly on hearsay evidence while here it was based primarily upon examination and observation of the land involved in this litigation. In addition the jury took a view and from it could form their own judgment as to what the whole area had been used for before the taking.

The petitioners further argue that the testimony of the expert for the Commonwealth was evidence of a special use and as such could not be used in diminution of value. The petitioners rely on cases where the special use was sought to be shown in an attempt to enhance the value of property

taken but the law appears to be applicable to an attempt to diminish value. The true rule is that "The damages must be measured by the market value of the land at the time it was taken; not its value to the petitioners, nor to the respondent; not the value which it might have under different circumstances from those then existing . . . the value for these special and possible purposes is not the test, but the fair market value of the land in view of all the purposes to which it was naturally adapted," with cases cited. *Moulton* v. *Newburyport Water Co.* 137 Mass. 163, 167. In *Holyhood Cemetery Association* v. *Brookline*, 215 Mass. 255, this court approved a judge's charge which said, "In determining damages in a case of this kind, the jury should consider not only the value of the property taken but also the effect of the taking upon that which is left; and in estimating the value of that which is taken, they may consider all the uses to which it might properly have been applied if it had not been taken." *Maynard* v. *Northampton*, 157 Mass. 218, 219.

The evidence complained of was not evidence of value of a special use but was rather evidence of value based upon the examination and observations of the expert. It was properly admitted.

*Exceptions overruled.*