THOMAS E. SOUTHWICK *vs.* MASSACHUSETTS TURNPIKE AUTHORITY.

Worcester. September 22, 1959. — November 4, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Evidence,* Of value, Opinion. *Practice, Civil,* Requests, rulings and instructions.

At the trial of a petition for assessment of damages for a taking of a small part of a tract of land including a part of a breached dam which had formerly held back the water of a brook and created a pond on the land, there was error where the judge not only excluded inadmissible testimony of the petitioner as to details of a particular unexecuted "futuristic" scheme for developing the property after repairing the dam and restoring the pond, but ultimately struck out all testimony by the petitioner, who had adequate knowledge of the tract, as to its value including testimony as to its general adaptability to a certain potential use in connection with a restored pond as a reason for his opinion of value [669–671]; it was error similarly to strike out the testimony of a real estate expert as to the value of the tract [671]; and the judge improperly refused to allow cross-examination of an expert witness for the respondent as to the effect of the presence of the dam on the value of the tract. [671–672]

No prejudice or abuse of discretion was shown in a trial judge's reading to the jury excerpts from opinions of this court in explanation of rulings on evidence. [672]

PETITION for assessment of damages for takings of land, filed in the Superior Court on January 31, 1956.

The petitioner alleged exceptions saved at the trial before *Meagher, J.*

*John J. O'Connell,* for the petitioner.

*Edward P. Healy,* for the respondent.

CUTTER, J. On January 27, 1955, and on July 12, 1956, by two takings, the respondent (the authority) took by eminent domain in the aggregate 1.37 acres of the petitioner's large[1] tract of land in Sturbridge. There were on the land at the time of the takings a dam three hundred fifty feet long, made of earth reinforced with stones, and a spillway "in fair condition."

The dam had formerly been used to hold back a pond, covering about twenty-five acres. The dam, however, had been broken "possibly twenty years ago" for a distance of "twenty-five to thirty feet wide," and the bed of the old pond had grown up to brush, alders, and other vegetation. A brook "with a fast . . . heavy flow" ran through the land.

After the takings, about half the dam was on the petitioner's land and half on the land of the authority. Of the "breached portion of the dam," the authority thereafter owned one third and the petitioner two thirds, but "now you couldn't fill in the breached portion of the dam to stop the water without going on land of the toll road; . . . you would have to construct a new dam." The spillway was wholly taken. An engineering witness testified that the "cost of repairing the old breach" in the dam would be $4,000.

These facts could have been found from the evidence at a trial of a petition for assessment of the damages arising from the takings. A verdict of $2,000 for the petitioner was returned. The petitioner's exceptions are to the action of the trial judge in excluding, or striking from the record, certain evidence offered in behalf of the petitioner.

1. The petitioner testified that the fair market value of his property before the takings was $50,000 and after the takings was $3,000; that he planned "to put in camp sites

---

[1] In one place in the record the parcel is said to contain forty-two acres; in another, eighty-eight acres.

. . . after the gap in the dam was filled in, and that's where the value was"; and that he also "considered the property as a pond for a fish and game association, or some club." Questions were asked of him about engineering estimates of the cost of constructing a new spillway, about his plans for development of the property for camp sites, and about the "active steps . . . to formulate a plan of development for . . . [his] property." The answers were excluded or, where answers were given in the first instance, were ordered struck from the record. The petitioner admitted on cross-examination that, after his acquisition of the property in 1937, "he didn't do anything to build up the dam and . . . didn't improve the rest of the land . . . except to cut some . . . bushes" and that "there were no buildings . . . [or] improvements . . . except that he had one of the parcels surveyed." He "considered the highest and best use of his property was for camp sites or to be sold as a single unit for a camp such as a rod and a gun club or the like . . .; that the brook was full of trout." At the close of the petitioner's testimony, on objection that his opinion was based "on a futuristic plan which had no real basis for it," all the petitioner's testimony on value was ordered struck from the record. Offers of proof were made "that in 1949, in 1950, and in 1952, he employed an engineer to survey the property for the purpose of developing a plan for lots, and that the property was surveyed for this purpose, [and] that he estimated what it would cost to clear the brush . . . and . . . to build roads."

An owner of real estate or personal property having adequate knowledge of his property may express an opinion as to its value. *Menici* v. *Orton Crane & Shovel Co.* 285 Mass. 499, 503–505. *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 198. See *Wenton* v. *Commonwealth*, 335 Mass. 78, 82–83. Cf. *Rubin* v. *Arlington*, 327 Mass. 382, 383–385. These decisions establish that whether the witness has the necessary knowledge about his property to enable him to express an opinion about its market value is a preliminary question of fact for

the judge.  In deciding this question, the judge must act within the scope of a sound judicial discretion.  His decision will be reversed where plainly erroneous, as in the case of a plainly incorrect decision about the qualifications of an expert witness.  See *Muskeget Island Club* v. *Nantucket,* 185 Mass. 303, 304–306; *Old Silver Beach Corp.* v. *Falmouth,* 266 Mass. 224, 226.  Cf. *Commonwealth* v. *Spencer,* 212 Mass. 438, 448.

Here the petitioner had lived in Leicester (not far from Sturbridge) for forty-eight years; he had owned the property from 1937 on; his father had owned it from 1918 to 1926; he "was acquainted with the property more or less for all his life"; he had made plans and surveys for its development, and had investigated in 1939, 1949, 1950, and 1952 the cost of repairing the breach in the dam and of clearing and improving the property; and he had visited another development using land adjoining a pond for a purpose similar to that for which he thought his own land was adapted.

We do not interpret the action of the judge in striking out the petitioner's testimony on market value as based on the ground that the petitioner's knowledge of the property was inadequate.  He appears to have done this because he felt that the petitioner's opinion (about the market value of the property taken and the depreciation in market value of the remaining property) was too dependent upon unexecuted plans for future development of the property.  Indeed much testimony, which the petitioner was not permitted to introduce, or which was struck from the record, was in form descriptive of a particular project for development of the land for camp sites on which at most a partial survey had been made prior to the taking.  Evidence about the details of this particular unexecuted project, as such (as distinguished from evidence about the contribution to the then existing market value caused by the possibility of using the property in connection with a restored pond), was not admissible.  See *Greenspan* v. *County of Norfolk,* 264 Mass. 9, 12–13; *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514,

518–519. Insufficient progress had been made to warrant admission of evidence about the particular project to prove the status of a partly executed development contributing to market value. See discussion in *Brush Hill Dev. Inc.* v. *Commonwealth*, 338 Mass. 359, 361–364. Nevertheless, the presence on the land of the brook and the dam, which might have been repaired prior to the taking at a cost of only $4,000, might well be of interest to a prospective purchaser. The possibility of restoring the large pond (which had existed some twenty years earlier) was sufficiently substantial to be entitled to consideration in appraising the market value of the land at the time of the takings. As was said in *Smith* v. *Commonwealth*, 210 Mass. 259, 261, in determining market value, "all the uses to which the property is reasonably adapted may be considered," although, of course, "witnesses . . . should not be permitted to enter the realm of speculation." See *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, 517; *Kinney* v. *Commonwealth*, 332 Mass. 568, 571–572; *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 193–194, and cases cited. The "consistent exercise of a trial judge's discretion to exclude testimony bearing on a particular aspect of the value of property may have the effect of denying to the owner the power of proving its real value." See *Brush Hill Dev. Inc.* v. *Commonwealth*, 338 Mass. 359, 362. In the present case, this was the consequence of the judge's exclusion of all of the petitioner's evidence on market value and of what amounted to his refusal to permit the petitioner (who knew enough about his property to express an opinion about the market value of his property and the reasons for his opinion) to testify at all about the weight he gave to the potential use of his property in connection with a restored pond. If the petitioner reasonably thought that a purchaser would pay more for the property because of the possibility of restoring the pond at low cost and because of the adaptability of it for camp sites, that was a question of judgment. The petitioner was entitled to bring out the relevant facts. If the reasons for his opinion could be

shown on cross-examination (a) to be unconvincing, or (b) to result in an overestimate of the value of the property or of the feasibility of restoring the pond, or (c) to be based on faulty analysis or inadequate investigation, these matters would go only to the weight of the testimony. They would not justify excluding the petitioner's testimony and reasons entirely. Portions of the testimony which were too closely related to a particular project of development (rather than to the effect upon market value of the general possibility of such a development) could have been excluded in less wholesale fashion. Cf. *Ford* v. *Worcester, ante,* 657, 659, 661, 662, where an owner of land and an expert were allowed reasonable opportunity to state their opinions and their reasons. The exception to the action of the judge in striking out all the petitioner's testimony on market value must be sustained.

2. Similar considerations lead us to hold that the trial judge improperly struck from the record the testimony of one Maher, a real estate expert of eighteen years' experience in the area as an appraiser and a developer of property of relevant types. He had "sold property on probably twelve or fifteen ponds . . . in Worcester County" and had examined the petitioner's property in 1955, before the turnpike was built, and in 1957. His testimony that the property was worth $46,600 before the takings and $10,600 thereafter was admissible, and he was entitled to take into account in forming his opinion, and to state, the various potential uses of the land, which he regarded as practicable and reasonable, so far as they contributed to the market value of the property existing at the time of the takings. He could properly take into consideration the value, if any, contributed by the practicability of repairing the dam and restoring the pond, and using the adjacent land in connection with such a pond.

3. The petitioner's counsel was not allowed to cross-examine a real estate expert, called by the authority, about whether "a buyer looking for property might be impressed by the fact that there was a dam there of some three hundred and seventy feet, even though it had a twenty foot

breach, and a spillway already built." This line of inquiry should have been allowed for it bore upon what may have been an important aspect of the value of the property and was plainly designed to test the expert's opinion and the adequacy of his consideration of relevant elements of value. See *Brush Hill Dev. Inc.* v. *Commonwealth*, 338 Mass. 359, 368; *Alford* v. *United States*, 282 U. S. 687, 691–693; McCormick, Evidence, § 29.

4. A qualified engineer was asked what the reasonable charge would be for filling the breach in the dam. Although the question was originally excluded, this action was not prejudicial for the engineer was permitted later to testify that "the cost of repairing the old breach" in the dam would be $4,000.

5. The petitioner excepted to the action of the judge in reading to the jury excerpts from earlier opinions of this court in explanation of his action in excluding or striking certain evidence. The petitioner's argument does not persuade us that this was in any degree prejudicial. The practice may involve risk of confusing the jury by isolated and incomplete instructions, and of placing undue emphasis upon particular aspects of the trial. The matter, however, is within the realm of the trial judge's discretion in the absence of a showing that the instruction was incorrect or inapplicable to the particular aspect of the case.

*Exceptions sustained.*