CLARENCE F. CARLSON & another *vs.* TOWN OF HOLDEN.

Worcester. April 9, 1970. — June 24, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Evidence,* Opinion: expert; Of value. *Witness,* Expert witness.

At the trial of a proceeding for assessment of damages for a taking by eminent domain of fifteen acres of farm land, where an owner of the land gave opinion testimony as to its value principally based on its suitability for house lots, there was thereafter no abuse of discretion in the exclusion of a question by the respondent in direct examination of a sanitary engineer, who had dug percolation test holes in an area within the parcel, as to the opinion of the witness respecting the suitability of the area tested "for the development of building lots" since, although an offer of proof was limited to suitability "for sewerage purposes," the witness had not been qualified as an expert on the subject of building development generally [25–26]; but there was reversible error in the exclusion of a question by the respondent on direct examination of another sanitary engineer, who had been present when the tests had been made, as to his opinion whether certain portions of the test area were "suitable for the construction of sewer systems for individual houses," followed by an offer of proof that in his opinion they were not suitable therefor [26–27].

PETITION filed in the Superior Court on May 1, 1967.

The case was tried before *Beaudreau,* J.

*Paul L. Hinckley,* Town Counsel, for the respondent.

*William E. Bernstein* for the petitioners.

QUIRICO, J. This is a petition for assessment of damages under G. L. c. 79. The case is before us on the exceptions of the town of Holden (town) to the exclusion of questions put by it to two witnesses concerning the suitability of the land in question for particular purposes.

On February 6, 1966, the town took from the petitioners by eminent domain for school purposes a parcel of land containing about fifteen acres located on the northerly side of Shrewsbury Street in that town. The parcel had a frontage of about 175 to 180 feet on the street and it extended about 1,500 feet northerly therefrom. Its width varied

from about 560 feet near its southerly end to about 360 feet at its northerly end. It is zoned for single family residences. There is a town water main in the street. There is no public sewer system in the area. The petitioners who are husband and wife purchased the property in 1945 and used it for farm purposes until it was taken from them. They live on the opposite side of the street from this parcel. The husband (Carlson) is sixty-four years of age and has lived in the town all of his life.

Carlson who was the only witness for the petitioners testified that he had become familiar with values of land in the town and in the area in which he lived and that in his opinion the fair market value of the parcel at the time it was taken was $75,000. He testified further that from 1945 to 1966 about 160 single family houses were constructed "in the area," and that he had made inquiries about the cost of roads and other things necessary to develop the parcel into building lots but he "had never had anything prepared for it." He also testified that in his judgment the highest and best use for the property at the time of the taking was for building lots, and that his opinion of value was based on how many lots he thought he could develop in a subdivision. He had made no soil tests for any development.

A qualified real estate appraiser, called as a witness by the town, testified that in his opinion the fair market value of the parcel was $22,750 based on his experience as the broker in the sale of about 500 acres of land in the town over the previous twenty years. He considered the property as development acreage and testified that the best use of the land was for residential purposes. He was familiar with the subdivision control regulations in the town. He said that to develop the parcel to its highest and best use as house lots it would be necessary to make soil tests to determine the suitability of the soil for cesspools or septic tank purposes.

The town then called two additional witnesses. One was Douglas L. Liston (Liston), a civil engineer and land surveyor with experience in sanitary engineering since 1953. The other was William Marhoffer (Marhoffer), a sanitary

engineer employed by the Commonwealth since 1956. I 1965 Liston, at the request of the town, made percolation tests of the parcel for the purpose of determining whether the soil would absorb the liquid discharge of the sewer system from the proposed school. Marhoffer was present, also at the request of the town, when the tests were made. He was there to evaluate the land as far as subsurface sewage disposal for a school site was concerned.

They started by digging six test holes to depths varying from six to ten feet,[1] using a power driven backhoe for the purpose. The holes were dug within an area about three acres in size, about half way between the northerly and southerly boundaries. Three of the holes were dug near the westerly boundary, two near the easterly boundary, and one near the middle of the three acre tract. A seventh hole was attempted, but ledge or solid rock was encountered.

The soil characteristics were observed as each hole was dug. After the six holes were dug, five of them were filled with water for the purpose of making percolation tests. Each hole was then observed and checked to determine how long it took for the water therein to drop one inch. In two of the holes the water dropped an inch in eight minutes; and in the other three holes it required over sixty minutes to drop an inch. The area showing the best results in the percolation tests was approved by Marhoffer for the construction of the sewer system for the proposed school.

Counsel for the town asked Liston in direct examination, "Do you have an opinion as a result of your examination of these test holes in July of 1965 as to whether or not that area tested was suitable for the development of building lots?" After answering affirmatively he was asked, "And what is your opinion?" Upon objection by the petitioners, the question was excluded. Counsel for the town made an offer of proof that "If the witness were allowed to answer

---

[1] This depth is required by the Department of Public Health's Rules and Regulations Relating to Public Health, Sanitary Code, art. 11, which applies to both private homes and public buildings. For power of the department to promulgate such a code, see G. L. c. 111, § 127A, inserted by St. 1965, c. 898, §§ 1, 3, replacing former G. L. c. 111, § 5, as to such a code.

he would answer that a portion of it was suitable for development purposes, and it would be test holes 1 and 2, and the remainder of his examination was not suitable for sewerage purposes." The presiding judge said, "The reason I am excluding it is that ultimately if there was a development or sub-division the determination would be made by a Planning Board or an engineer for the Planning Board, and he might qualify those areas that were not in this gentleman's opinion suitable by requiring greater extension of leeching fields and different types of pipe and so forth. That's the reason I'm excluding it because there are too many qualifications that are applicable to these opinions." The town excepted to the exclusion of its question.

Counsel for the town asked Marhoffer in direct examination, "And as a sanitary engineer . . . do you have an opinion as to whether or not the other areas of the property where test holes were taken [other than the area of three test holes which he had approved for the school's sewer system] were suitable for the construction of sewer systems for individual houses?" After answering affirmatively he was asked, "What is your opinion?" Upon objection by the petitioners, that question was excluded by the judge. His reason for exclusion and counsel's subsequent offer of proof were the same as when Liston had been questioned.

The only exceptions before us are those taken by the town to the exclusion of the above questions to Liston and Marhoffer. Since the questions are different, we shall consider them separately.

1. The question to Liston asked for his opinion as to whether or not "that area tested was suitable for the development of building lots." Liston's background could qualify him as a civil engineer, land surveyor and sanitary engineer. The question put to him and excluded was not limited to an opinion in the area in which he possessed special training and experience. It asked for his opinion generally as to the suitability of the area tested "for the development of building lots." Although the offer of proof was limited to the factor of suitability "for sewerage pur-

poses," the question was of much greater scope. There being no evidence that Liston possessed qualifications on the subject of the development of acreage into building lots generally, the question was excludable by the judge in the proper exercise of his discretion. *Klous* v. *Commonwealth,* 188 Mass. 149, 152. *Beals* v. *Brookline,* 245 Mass. 20, 27. *Maher* v. *Commonwealth,* 291 Mass. 343, 349. *Lee Lime Corp.* v. *Massachusetts Turnpike Authy.* 337 Mass. 433, 436–437. The question asking for Liston's opinion was properly excluded even if the judge's statement in excluding it does not support his action.

2. The question put to Marhoffer and excluded was much more limited than the one which had been put to Liston. After Marhoffer had testified that he had approved the area of three test holes as suitable for the school's sewer system, he was asked for his opinion as to "whether or not the other areas of the property where test holes were taken were suitable for the construction of sewer systems for individual houses." Marhoffer had qualified as an expert witness on the subject of sanitary engineering. No question was raised about his qualifications and the question was not excluded on that basis. The sole factual issue being tried was the fair market value of the property taken by the town. G. L. c. 79, § 12. In determining that value, "the jury were at liberty to take into account all the uses and capabilities to which it was then adapted or might be applied. . . . The possibilities of the land for future use at the time of the taking and the nature and purpose of such uses were therefore legitimate matters of inquiry and argument so far as they affected the present value." *Fosgate* v. *Hudson,* 178 Mass. 225, 232. *Meisel Press Mfg. Co.* v. *Boston,* 272 Mass. 372, 383. *Aselbekian* v. *Massachusetts Turnpike Authy.* 341 Mass. 398, 400.

Carlson was properly allowed to testify earlier about the factors which he considered in reaching his opinion that the fair market value of the fifteen acre parcel taken by the town was $75,000. The suitability of the land for house lots was the principal basis for his opinion of value. Thus the

suitability of the land for such purpose became a legitimate matter of inquiry at the trial. Carlson's opinion about such suitability did not bind the town and it did not foreclose further inquiry on the subject. It was open to the town to attempt to show, by cross-examination of Carlson or otherwise, that the land or a significant portion of it was not suitable for such purpose. Such contrary evidence could then be considered by the jury in determining the weight to be given to Carlson's opinion. *Southwick* v. *Massachusetts Turnpike Authy.* 339 Mass. 666, 671. In *Commonwealth* v. *Massachusetts Turnpike Authy.* 352 Mass. 143, 151, we said that "an expert [appraiser] may explain in his testimony, as part of his reasons, the considerations which in fact he has taken into account in reaching his opinion. . . . He will, of course, be subject to proper testing of his reasoning on cross-examination." An owner who gives his opinion of the value of his property and the reasons therefor is subject to the same proper testing of his reasoning. The testing may be by cross-examination or it may be by relevant contrary testimony from other witnesses.

The town offered the opinion of Marhoffer that the areas of the property where three, and possibly four, of the test holes were dug were not suitable for the construction of sewer systems for individual houses. The opinion was relevant on the issue of the suitability of that part of the total parcel for house lots. The town was entitled to place that evidence before the jury to be considered in weighing Carlson's opinion. It was error to exclude the question to Marhoffer.

*Exceptions sustained.*