R. H. WHITE REALTY CO., INC. *vs.* BOSTON
REDEVELOPMENT AUTHORITY.

Suffolk.    February 13, 1975. — October 7, 1975.

Present:. HALE, C.J., ROSE, & KEVILLE, JJ.

*Evidence,* Opinion: expert; Of value.    *Witness,* Expert witness.    *Practice, Civil,* Fair trial.    *Eminent Domain,* Damages.

At the trial of a petition for assessment of damages for a taking of land and buildings owned by the petitioner, there was no abuse of discretion in the admission of testimony by an expert witness that the highest and best use of the locus was as a site for the construction of a new building devoted to retail, office and other uses, where redevelopment of the property constituted a potential use to which the property might reasonably be adapted. [506-507]

At the trial of a petition for assessment of damages for a taking of land and buildings located in downtown Boston, there was no abuse of discretion in allowing an expert witness who had studied approximately 200 sales of downtown Boston real estate to testify concerning other downtown sales where the sales were cited not as independent substantive evidence of the market value of petitioner's property but as background for the witness's opinion, and where his testimony did not include the actual prices paid in any of the sales. [507-508]

R. H. White Realty Co., Inc. *v.* Boston Redevelopment Authority.

At the trial of a petition for assessment of damages for a taking of land and buildings located in downtown Boston, there was no abuse of discretion in the judge's refusal to allow a witness called by the respondent to testify as an expert where, despite his considerable experience as an appraiser in New York and elsewhere, the witness was largely unfamiliar with the retail business in Boston and lacked knowledge of other relevant considerations such as the nature of Boston's public transportation system, and the geography of the city. [508-509]

In the circumstances, remarks directed to counsel for the respondent by the judge and evidentiary rulings in favor of the petitioners would not warrant a conclusion by this court that the respondent had been denied a fair and impartial trial or that the judge abused his discretion in refusing to disqualify himself from sitting on the case. [509-511]

PETITION filed in the Superior Court on July 14, 1967.

The case was tried before *Chmielinski,* J.

*George F. Mahoney* (*William L. Kendrick, Jr.,* with him) for the defendant.

*George A. McLaughlin, Jr.* (*George A. McLaughlin, Sr., & David G. Hanrahan* with him) for the plaintiff.

KEVILLE, J.   This is a petition under G. L. c. 79 for the assessment of damages arising from the respondent's taking in 1966 of 42,591 square feet of land (the locus), together with the buildings thereon, owned by the petitioner. The locus is situated on Washington Street in Boston and constitutes eighty-three percent of a city block. For many years a large department store occupied both the buildings on the locus and those on the remainder of the block, but the store failed in 1957 and an attempt to operate another store on the premises also failed. A jury returned a verdict for the petitioner in the amount of $2,850,000, and the respondent appealed. Mass.R.Civ.P. 1A, subpar. 7, 365 Mass. 732 (1974).

1. An expert witness for the petitioner, whose qualifications were not disputed, testified in part that the highest and best use of the locus was as a site for the construction of a new building devoted to retail, office and other uses. It was his opinion that the fair market value of the locus was $75 a square foot or $3,190,000. He had studied approximately 200 sales of downtown Boston real estate and, of

3 Mass. App. Ct. 505                                    507

R. H. White Realty Co., Inc. *v.* Boston Redevelopment Authority.

these, approximately 72 had been variously combined to form 10 assemblages, ranging from 20,000 to 100,000 square feet in area, zoned, like the locus, for business use, and redeveloped for commercial purposes. These sales had occurred between 1957 and 1971, several within a year or two of the taking. The respondent asserts that the admission of this testimony was error because the possible use of the locus for redevelopment was too speculative and the sales on which this witness based his estimate of market value were of properties not comparable to the locus.

In determining market value, potential uses to which property is reasonably adapted may be considered. *Carlson* v. *Holden,* 358 Mass. 22, 26-27 (1970), and cases cited. There was evidence that the size and location of the locus were suitable for redevelopment (compare *Southwick* v. *Massachusetts Turnpike Authy.* 339 Mass. 666, 667-671 [1959]; *Aselbekian* v. *Massachusetts Turnpike Authy.* 341 Mass. 398, 399-401 [1960]; *Carlson* v. *Holden, supra;* contrast *Skyline Homes, Inc.* v. *Commonwealth,* 362 Mass. 684, 686-687 [1972]), and that since the late 1950's sales of land in downtown Boston, particularly for the purpose of new construction, had greatly increased. Compare *Wenton* v. *Commonwealth,* 335 Mass. 78, 83 (1956). The testimony of the witness did not relate speculatively or unreasonably in detail to a particular redevelopment project. He testified only concerning the effect of the general possibility of such a project upon the market value of the locus. See the *Southwick* case, *supra,* at 669, 671; *Boston Edison Co., petitioner,* 341 Mass. 86, 92-93 (1960); the *Aselbekian* case, *supra,* at 400-401. Contrast *Greenspan* v. *Norfolk,* 264 Mass. 9, 12-13 (1928); *Meisel Press Mfg. Co.* v. *Boston,* 272 Mass. 372, 382-383 (1930); *Brush Hill Dev. Inc.* v. *Commonwealth,* 338 Mass. 359, 361-364 (1959).

We discern no abuse of the judge's broad discretion (*Iris* v. *Hingham,* 303 Mass. 401, 408-409 [1939]; *Nonni* v. *Commonwealth,* 356 Mass. 264, 268-269 [1969], and cases cited) in his allowance of the witness' testimony concerning the other downtown sales. The witness cited these sales not as independent substantive evidence of market value but

508                                3 Mass. App. Ct. 505

R. H. White Realty Co., Inc. *v.* Boston Redevelopment Authority.

merely in support of and as background for his opinion, and his testimony did not include the actual prices paid in any of these sales. *Hunt* v. *Boston*, 152 Mass. 168, 171 (1890). See Nichols, Eminent Domain, § 18.42[1] (Rev. 3d ed. 1974). Even assuming the standard for the admission of such evidence, when used simply as background for the witness' opinion, to be no less strict than that when sale prices are offered as independent evidence of market value, we cannot say that the judge erred. *Johnson* v. *Lowell*, 240 Mass. 546, 549 (1922). *Leen* v. *Board of Assessors of Boston*, 345 Mass. 494, 505-507 (1963). *H. E. Fletcher Co.* v. *Commonwealth*, 350 Mass. 316, 324-326 (1966). See *Valley Paper Co.* v. *Holyoke Housing Authy.* 346 Mass. 561, 569 (1963). The respondent could, of course, show on cross examination or otherwise that the prospect of redeveloping the locus was remote or that there were significant dissimilarities between the locus and the properties included in the sales mentioned by the witness. Such contrary evidence could be considered by the jury in determining what weight should be given to his testimony. *Southwick* case, 339 Mass. at 670-671. *Carlson* case, 358 Mass. at 27.

2. The respondent called one Kazdin as an expert witness. After a voir dire on his qualifications, the judge refused to permit Kazdin to testify, primarily because of his lack of knowledge of the real estate market in the Boston area. The respondent excepted. A judge has broad discretion in determining whether a witness is qualified to testify as an expert, and his decision is rarely disturbed. *Rubin* v. *Arlington*, 327 Mass. 382, 384-385 (1951). *Muzi* v. *Commonwealth*, 335 Mass. 101, 106 (1956). There was no error here. Although Kazdin possessed considerable experience as an appraiser in New York and elsewhere, he had never bought or sold property in this Commonwealth, and had never previously appraised property in Boston. He was largely unfamiliar with the retail business in Boston and lacked knowledge of other relevant considerations such as the nature of Boston's public transportation system, the geography of the city and of its environs. See *Benton* v.

*Brookline,* 151 Mass. 250, 252-253, 266 (1890); *Manning* v. *Lowell,* 173 Mass. 100, 102 (1899); *Maher* v. *Commonwealth,* 291 Mass. 343, 349 (1935); Nichols, Eminent Domain, §§ 18.4[1] and [3] (Rev. 3d ed. 1974). Compare *Lee Lime Corp.* v. *Massachusetts Turnpike Authy.* 337 Mass. 433, 436-437 (1958). Contrast *Haven* v. *Brimfield,* 345 Mass. 529, 530-531 (1963). And the fact emphasized by the respondent that Kazdin in his experience of forty-five years had appraised approximately eight large department stores in urban and suburban New York insufficiently demonstrated experience in evaluating properties of such similarity to the locus to require the judge to permit him to testify. The respondent's cause is not advanced in this regard by its reliance upon *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189 (1956). There the fact that the property taken was used for and adapted to a "specialized" use warranted much greater flexibility in the presentation of evidence than would be permitted in the evaluation of properties like the locus which are adapted to more conventional uses. *Id.* at 194-195, 197.

3. Finally, the respondent asserts that its right to a fair and impartial trial has been denied; the respondent cites certain remarks of the judge which it claims were prejudicial and several evidentiary rulings (including those already discussed) which it argues show a pattern of liberality toward the petitioner and restrictiveness toward the respondent. The remarks of the judge to which the respondent primarily objects occurred as follows. At the beginning of the eighth day of the eleven-day trial the judge said, in the presence of the jury, that he had noticed that counsel for the respondent seemed "to be making side remarks to the jury out of the corner of ... [his] mouth." The judge warned that he would not "countenance lawyers trying to communicate ... with the jury so that no one else can hear what they are saying." A poll of the jury immediately requested by respondent's counsel indicated that no juror had heard any such remarks. The respondent's counsel took no exception to these remarks of the judge. *Harrington* v.

*Boston Elev. Ry.* 229 Mass. 421, 434 (1918). *Commonwealth* v. *Balakin,* 356 Mass. 547, 551 (1969). During a lobby conference later in the morning, the judge offered to tell the jury "distinctly" that he had been mistaken in thinking that the respondent's counsel had made side remarks to the jury, but counsel answered, "You don't have to say so." Other remarks of the judge, some of which the respondent did except to, were designed to avoid unnecessary delay (compare *Commonwealth* v. *French,* 357 Mass. 356, 394 [1970], judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U. S. 936 [1972]; *Commonwealth* v. *Kelley,* 359 Mass. 77, 95 [1971]), or were made out of the presence of the jury (*O'Brien* v. *Wellesley College,* 346 Mass. 162, 173 [1963]), or were awkward attempts at humor intended apparently to give the jury some relief from the tedium of the trial. Moreover, in his instructions to the jury the judge admonished the jurors to disregard any colloquies between him and counsel.[1] *Commonwealth* v. *Lewis,* 346 Mass. 373, 379 (1963), cert. den. 376 U. S. 933 (1964). *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 226-229 (1967), cert. den. 389 U. S. 916 (1967). *Commonwealth* v. *French, supra,* at 394-395. Clearly, the remarks of the judge, previously quoted, directed to counsel for the respondent should have been made beyond the hearing of the jury. Nonetheless we do not conclude that, considering all the circumstances, the judge's remarks were prejudicial to the respondent. *Commonwealth* v. *Donaruma,* 260 Mass. 233, 235-236, 237 (1927). *Commonwealth* v. *McLaughlin, supra,* at 226-229.[2]

---

[1] The judge said in part, "[A]ny colloquy between the bench and the attorneys, any remarks made and so on, certainly are not evidence, and I don't want to have any such incident have any effect upon your deliberations. So, if you do have any memory of colloquy between the bench and the lawyers, kindly disregard that."

[2] Since the judge did not see fit to retract his accusation immediately when it at once became clear that he was mistaken, we think that if that incident engendered any unfavorable reaction in the minds of the jurors, it would quite properly have been directed toward the judge rather than toward counsel for the respondent.

The judge's evidentiary rulings cited by the respondent as instances of prejudice were all discretionary. *Quirk* v. *Maynard,* 360 Mass. 845 (1971). We discern no evidence of bias or abuse of discretion in his exclusion of evidence offered by the respondent with respect to the sale prices of much smaller parcels of land than the locus and in the admission in evidence of the sales (without stating the sale prices) comprising the assemblages of land considered in the first part of this opinion. Viewing the record as a whole (*O'Brien* v. *Wellesley College, supra,* at 174; *Commonwealth* v. *McLaughlin, supra,* at 228; *Commonwealth* v. *Leventhal,* 364 Mass. 718, 723-724 [1974]), we do not reach the conclusion that the respondents were denied a fair and impartial trial or that the judge abused his discretion in refusing, at the respondent's request, to disqualify himself from sitting on the case. *Commonwealth* v. *Leventhal, supra,* at 721-723. Judgment is to be entered on the verdict of the jury.

*So ordered.*