SAXON THEATRE CORPORATION OF BOSTON *vs.* PAUL
HAYDEN & others.[1]

Suffolk.    February 16, 1979. — June 1, 1979.

Present: ARMSTRONG, GREANEY, & PERRETTA, JJ.

*Value. Evidence,* Value, Expert opinion. *Witness,* Expert witness.

In an action for breach of a contract whereby the defendants would
    construct and lease to the plaintiff two movie theaters, the judge did
    not err in refusing to qualify a witness to give his opinion as to the
    value of the leasehold where the witness had no experience with
    movie theater real estate in Massachusetts and a movie theater site
    in Boston was not a type of special use realty comprehended by
    *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.,*
    335 Mass. 189 (1956). [697-699]

CONTRACT. Writ in the Superior Court dated July 1,
1971.

The action was tried before *Nolan, J.,* a District Court
judge sitting under statutory authority.

*Alan R. Hoffman* for the plaintiff.

*Jerome P. Facher* for the defendants.

PERRETTA, J. This case comes before us on cross appeals
from a judgment entered on a verdict for the plaintiff,
Saxon Theatre Corporation (Saxon), in the amount of one
dollar. We affirm the judgment.

Saxon entered into a contract with Dalton Associates
(Dalton), a limited partnership organized under G. L. c.
109, whereby Dalton would construct and lease to Saxon
two movie theaters in the Prudential Center area of Bos-
ton. These two theaters were to supplement three exist-

---

[1] Herbert S. Hoffman, Theodor H. Kaufman, A. Eugene Kateman,
Charles J. Kickham, Jr., and Donald L. Saunders, the general partners
of Dalton Associates, a limited Massachusetts partnership.

ing theaters owned and operated by Saxon in that same area, known as the Cheri Complex.

The contract provided that Dalton would commence construction of the theaters "within two years from the date of the execution" of the lease, June 19, 1967. If construction were not commenced within this time period, Saxon had the option to terminate the contract at any time after that period until construction had "actually commenced." Once it broke ground, Dalton had two years from the date of commencing construction to complete the theaters. If construction were not timely completed, Dalton was to be liable for liquidated damages in the amount of one hundred dollars a day until the theaters should be completed.

As of June 19, 1969, construction had not started but Saxon never exercised its option to terminate; rather, on August 2, 1971, it commenced suit. The purpose of the action was to recover damages occasioned by Dalton's alleged breach. Saxon claims on appeal that the judge's refusal to qualify its witness as an expert and allow him to testify as to his opinion of the value of the leasehold was error affecting the jury's award of damages. Dalton argues that it was entitled to a directed verdict because Saxon's option to terminate the contract was an exclusive remedy.

Saxon sought to prove damages by proving the value of the leasehold if (1) the theaters had been constructed, (2) the theaters had been in operation by June 19, 1971, the date characterized by Saxon as the agreed upon completion date, and (3) the theaters had experienced the income and expense structure described by prior witnesses.[2] Richard Jeha, a theater real estate expert, was

---

[2] Saxon's president and treasurer projected an income and expense profile of the nonexisting theaters by computing the average annual income and expense figures of the three existing theaters based on the five-year period of 1971 through 1975 and noting the similarities between the existing theaters and the specifications for the ones to be built and the nature of the location of the intended theaters.

called by Saxon to give his opinion of the value of the leasehold, assuming all three of the contingencies had been met. The judge ruled that Jeha was not qualified to give such an opinion. Saxon claims the ruling was error, and it urges that our review is not limited to the issue of an abuse of discretion when, as here claimed, that ruling was based upon a misunderstanding of applicable legal principles and the issues of fact upon which the testimony was offered. See *Commonwealth* v. *Banuchi,* 335 Mass. 649, 655 (1957). The trial judge neither abused his discretion nor misunderstood the issues of fact or law.

Jeha had extensive experience in owning and operating movie theaters in California. He had worked for a major film production company and chain theater owner evaluating existing and proposed theater sites for acquisition by the company. His duties with the company after 1966 had involved site work, which was described as the determination of the feasibility of constructing, purchasing, or leasing a theater. Jeha had done this work in many States, primarily California, but he had never done site work east of the Mississippi River. Saxon argues that because of the nature of the property involved Jeha's special knowledge in evaluating the realty upon which a theater was to be built qualified him to give his opinion, even though he had no experience with movie theater real estate in Massachusetts and no experience negotiating for leases where the theater was yet to be built.

Saxon argues that Jeha's lack of knowledge concerning theater real estate in Massachusetts should not have been of any consequence and that, because "no active market" for the property exists, the special use holding in *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.,* 335 Mass. 189, 193-196 (1956), should control. In that case the court held that the special use of the land taken, part of a camp site, required the judge to allow "more complex and resourceful methods of ascertaining [its] value." *Id.* at 195. We are not compelled to apply that conclusion to this case for a number of reasons.

We are unwilling to regard a movie theater site in Boston as that type of special use realty comprehended by *Newton Girl Scout.* See also *Lee Lime Corp.* v. *Massachusetts Turnpike Authy.,* 337 Mass. 433 (1958) (value of lime quarry). The fact that no active market existed for the property does not render it unique. Further, in *Newton Girl Scout* the court was dealing with a freehold interest in specially developed land; we are concerned with the leasehold rights to theaters never erected.

Saxon was not seeking damages for the loss of enjoyment of the property per se; rather, it was seeking the lost profits it anticipated that it would have derived from the theaters if they had been built. The testimony sought from Jeha, no matter how narrowly the questions may be viewed, inherently involved his opinion as to the profitability of movie theaters in Boston. The testimony indicated, however, that he was particularly unfamilar with Boston both as a city and as a theater market. In these circumstances the trial judge was not required to conclude that Jeha was shown to be qualified to express the opinion sought of him. While there may arise situations where more flexibility in qualifying an expert witness will be desirable because no active market for the property exists[3] (See *Boston Safe Deposit & Trust Co.* v. *Stone,* 348 Mass. 345, 350 [1965]), it is obviously desirable that any such expert have at least some notion of the locus about which he is asked to give an opinion. *R.H. White Realty Co.* v. *Boston Redevelopment Authy.,* 3 Mass. App. Ct. 505, 509 (1975). Because Jeha lacked this basic knowledge, the judge did not err in ruling that he was not

---

[3] Saxon cites *Lee Shops, Inc.* v. *Schatten-Cypress Co.,* 350 F.2d 12, 16-18 (6th Cir. 1965), where an expert witness was allowed to give his opinion as to the value of a sublease on a discount store, taking estimated profits into account in formulating this opinion. We note that, while the court did allow anticipated profits as a factor of value, the expert witness had conducted a market survey of the area before the lease was signed and had prepared three profit and loss statements, all of which he used in determining anticipated estimated profits.

qualified to express his opinion of the value of this lease-hold.

Because of that conclusion it is unnecessary to reach Saxon's contention that a new trial should be limited to the issue of damages.

Dalton, as we have noted, cross appealed, claiming it was entitled to a directed verdict because rescission was Saxon's exclusive remedy. Dalton alleges error by the judge in admitting evidence of the parties' intentions with respect to the exclusivity of the right of rescission and then leaving that question to the jury. We are inclined to think that that was error. The contract is unambiguous in this respect and does not make the right of rescission an exclusive remedy; but since the jury, by implication of its verdict, found the remedy not exclusive, no harm was done.

*Judgment affirmed.*