GEORGE T. Ux & another[1] *vs.* TOWN OF NORTH READING. December 24, 1979. After a trial without jury a judge of the Superior Court awarded

---

[1] Etta E. Ux.

the plaintiffs $9,200 as damages for a parcel of 9.2 acres taken from them by the town of North Reading. The plaintiffs then requested a trial by jury. G. L. c. 79, § 22, as appearing in St. 1973, c. 983, § 1. At the jury trial the plaintiffs presented testimony by an expert witness who expressed the opinion that (a) the "highest and best use" for the land was for a subdivision into three lots and the construction of a single dwelling on each lot, in which event the total value of the land would be $54,427, and (b) in the event the land could not be subdivided it would have a value of $32,250 for use as a single lot for residential purposes. The town presented testimony by two expert witnesses, one who expressed the opinion that the land was worth $6,500 computed at approximately $700 an acre, and the other who expressed the opinion that it was worth $9,200 computed at $1,000 an acre. The jury returned a verdict of $25,000 damages. The town appealed.

The large spread between the appraisal given by the plaintiffs' expert and those of the town's experts was due largely to two factors. The first was whether soil conditions, including the presence of ledge and water, would prevent sewage disposal by septic systems, and the second was whether subdivision of the parcel would require planning board approval.

1. At the jury trial the town offered, and the judge excluded, two maps showing soil conditions, including "wetlands areas" and outcroppings of ledge in the town. The maps, one a "Geological Survey Map," and the other a "Soil Conservation Map," had been issued by an agency of the United States government. Both maps were expressly incorporated into the town's zoning by-law by § 11.2J thereof entitled "Development in Wetland Areas." The suitability of the parcel of land in question for residential purposes "became a legitimate matter of inquiry at the trial . . . [and] [i]t was open to the town . . . to show . . . that the land or a significant portion of it was not suitable for such purpose." *Carlson* v. *Holden,* 358 Mass. 22, 27 (1970). The presence of wetland or ledge on or near the parcel might affect the suitability of the land for residential purposes and therefore might bear on the value of the land. The two maps which the judge excluded were relevant to that issue and their exclusion by the judge was error.

The town offered, and the judge excluded, two other maps, one entitled "Soil Limitations for Home Sites," and the other "Soil Limitations for Septic Tank Sewage Disposal," both relating to the town of North Reading. These two maps are also relevant to the basic issue of the fair market value of the land in question, and would be admissible if properly authenticated and otherwise shown to be competent. Whether such maps quali-- fy for admission in evidence may depend on preliminary findings to be made by the judge. See G. L. c. 233, §§ 76, 79B, and *Ricciutti* v. *Sylvania Elec. Prods. Inc.,* 343 Mass. 347, 350-351 (1961). We are unable to determine on the record before us whether such preliminary findings were

made in this case and must therefore leave this question for consideration by the judge who presides at any retrial of this action.

2. The definition of "subdivision" contained in G. L. c. 41, § 81L, as amended through St. 1965, c. 61, provides in part that the division of a parcel into two or more lots constitutes a "subdivision" and thus must have planning board approval unless each resulting lot fronts on a public way or a way shown on a plan previously approved and endorsed under the Subdivision Control Law or on "(c) a way in existence when the subdivision control law became effective in the . . . town in which the land lies," and unless the way further meets certain other standards prescribed by the planning board. It was agreed that the land in question did not front on a public way, and there was no evidence that the road by which it was reached, viz., Swan Pond Road, was shown on any plan theretofore approved and endorsed in accordance with the Subdivision Control Law. There was conflicting evidence whether the portion of Swan Pond Road near the locus fell within the language quoted above from G. L. c. 41, § 81L. By the terms of cl. (c) the decision whether Swan Pond Road comes within its language is vested in the planning board in the first instance. If they decide that it does not, and that therefore planning board approval of a division of the parcel in question would be required, the owners would be required to expend large sums for preparation of plans and for the construction of a road and related facilities which meet the specifications prescribed by the planning board. Cf. *Casagrande* v. *Town Clerk of Harvard*, 377 Mass. 703 (1979).

In support of its claim that a division of the parcel would require planning board approval, the town offered as an exhibit the board's "Rules and Regulations Governing the Subdivision of Land," which the judge excluded. This evidence was relevant, material, and competent on the subsidiary question whether Swan Pond Road near the parcel fell within the language of G. L. c. 41, § 81L, defining "subdivision." In arriving at his opinion that the parcel was worth $54,427, the plaintiffs' expert witness assumed that it could be divided into three lots without planning board approval. The judge apparently assumed and ruled that such a division would not require such approval. By so doing the judge deprived the town of an opportunity to present evidence which, if believed, would permit the finding of facts which would permit or require a contrary conclusion, viz., that planning board approval was required for such a division.

The exclusion of this evidence was error. *Carlson* v. *Holden,* supra at 26-27.

*Judgment reversed.*

*Eric W. Wodlinger* for the defendant.
*Edward P. McDuffee* for the plaintiffs.